ANN C. CARLIN *vs.* J. ALFRED RITTER and others.
ANN C. CARLIN *vs.* J. ALFRED RITTER.

*Landlord and Tenant—Trade fixtures—Loss of Right of Removal—Structures which are not Fixtures.*

Where a tenant from year to year, places on the premises certain buildings, structures and fixtures, and subsequently during the tenancy, and after receiving notice to quit at the end of the current year, accepts from his landlord a written lease of the premises, " together with all the rights, appurtenances, and privileges thereunto belonging," for a term of five years, without a reservation of the right to remove the fixtures then on the premises, the right of removal is lost.

Wooden structures or buildings, resting by their own weight on flat stones laid upon the surface of the ground, without any other foundation, are not fixtures.

APPEALS from the Circuit Court for Frederick County, in Equity.

The cases are stated in the opinion of the Court.

The causes were argued before ALVEY, C. J., YELLOTT, MILLER, ROBINSON, IRVING, and BRYAN, J.

*C. V. S. Levy,* and *Milton G. Urner,* for the appellant.
Trade fixtures have been held by the earliest cases in which the question arose, to form an exception to the general rule, that whatever is fixed to the soil becomes part of the soil; no matter how strongly attached to the soil or firmly imbedded in it, they are treated as personal property, and as such subject to removal by the person erecting them. *Northern Cent. Railway Co. vs. Canton Co.,* 30 *Md.,* 352; *Hellawell vs. Eastwood,* 6 *Exch.,* 295, 312; *Holmes vs. Tremper,* 20 *Johns.,* 28; *Van Ness vs. Pacard,* 2 *Peters,* 137.

Carlin *vs.* Ritter.

The appellant is clearly entitled to the ice house as personal property. *Antoni vs. Belknap,* 102 *Mass.,* 192 ; *Rex vs. Otley,* 1 *Barn. & Ad.,* 161 ; *Wansbrough vs. Maton,* 4 *Ad. & Ell.,* 884.

As to the shelving, counter and mirrors, see *Hanrahan vs. O'Reilly,* 102 *Mass.,* 201 ; *Guthrie vs. Jones,* 108 *Mass.,* 191.

As to the awning, see *Deven vs. Dougherty,* 27 *How. Pr.,* 455.

As to the grates and portable furnace, see *Gaffield vs. Hapgood,* 17 *Pick.,* 192 ; *Rex vs. St. Dunstan,* 4 *Barn. & Cress.,* 686 ; *Colegrave vs. Dias Santos,* 1 *Barn. & Cress.,* 77 ; *Davis vs. Moss,* 38 *Pa. St.,* 346 ; *Hey vs. Bruner,* 61 *Pa. St.,* 87 ; *Lacy vs. Gibony,* 36 *Mo.,* 320 ; *Moore vs. Wood,* 12 *Abbott's Pr.,* 393.

As to the bake house and oven, see *Ombony vs. Jones,* 19 *N. Y.,* 234 ; *Doty vs. Gorham,* 5 *Pick.,* 487.

As to the enclosure for the carriage, see *Wells vs. Bannister,* 4 *Mass.,* 514 ; *Taylor vs. Townsend,* 8 *Mass.,* 411.

As to the fountain, see *Beck vs. Rebow,* 1 *P. Wms.,* 94 ; *Grymes vs. Boweren,* 6 *Bing.,* 437.

The execution of the leases of 1880 does not debar the appellant of her right to remove these fixtures and personal property. *Kerr vs. Kingsbury,* 39 *Mich.,* 150 ; *Pemberton vs. King,* 2 *Dev.,* 376.

*C. O. Keedy,* and *William P. Maulsby, Jr.,* for the appellees.

Among the controlling principles of the law of fixtures, as between landlord and tenant, are the contracts of dealings which the parties have or make upon the termination of an original term or tenancy of a *certain or fixed duration,* and the taking of a new lease of the premises. Now upon the termination of a fixed or certain term, the tenant may

1. Actually remove from and quit possession of the premises, leaving fixtures behind; in which case he loses his right to them. *Tyler on Fixtures,* 418.

Carlin *vs.* Ritter.

2. He may hold over without any new agreement, in which case his subsequent possession is called "an excrescence of the term," and he has the right of removal while his possession as tenant lasts. *Mackintosh vs. Trotter, 3 Mees. & W.,* 184.

3. He may by express agreement, take a new lease without reserving or claiming fixtures; in which case he is afterward precluded from claiming them. Of this class is the case at bar. This doctrine, although never expressly decided in Maryland, is sustained by all the text writers, and an almost unbroken line of decisions of other Courts. *Taylor's Land. & Ten.,* sec. 552; *Ewell on Fixt.,* 174-5; *Tyler on Fixt.,* 439; *Loughran vs. Ross,* 45 *N. Y.,* 792; *Watriss vs. First Natl. Bnk.,* 124 *Mass.,* 571; *Merritt vs. Judd,* 14 *Cal.,* 59; *Sheard vs. Spaulding,* 4 *Metc.,* 416; *Davis vs. Moss,* 38 *Pa. St.,* 346.

This doctrine is the logical result of the true nature of fixtures, which when once annexed partake of the nature of the freehold, subject to the right of the tenant to remove them during the term, and thus reduce them again to their chattel state. *Tyler on Fixtures,* 166; *Taylor, Land. & Ten.,* sec. 551; *Ewell on Fixtures,* 77, 78, 138, 139; *Lee vs. Risdon,* 7 *Taunt.,* 191; *Mackintosh vs. Trotter,* 2 *Mees. & W.,* 185; *Minshall vs. Lloyd,* 2 *Mees. & W.,* 450.

In Maryland it has been said: "The ground upon which a tenant's right to remove his fixtures, has been limited to the term, rests upon the doctrine, that if he neglect to avail himself of his rights within this period, the law presumes that he voluntarily relinquished his claim in favor of the landlord." *Northern Cent'l Railway Co. vs. Canton Co.,* 30 *Md.,* 355.

MILLER, J., delivered the opinion of the Court.

The facts material to the decision of the only important question in this case may be summarized thus: The owner of the City Hotel and grounds in Frederick had rented

them for about twelve years prior to 1880 to a tenant at a yearly rent. This was simply a tenancy from year to year with no written terms or conditions. During his holding under this tenancy the tenant erected and placed in and on the premises certain buildings, structures and fixtures, all of which are termed and claimed by the appellant as "trade fixtures," and are the subject of the present controversy. In March, 1880, the landlord served notice in due form upon the tenant to quit at the end of the current year. He did not, however, quit in accordance with this notice, but obtained and accepted from his landlord a written lease of the premises for a term of five years from the 1st of October, 1880. This lease makes no reference whatever to the former tenancy. It describes the property leased as "the premises known as the City Hotel, situated on the North side of West Patrick Street, fronting sixty-one feet, more or less, in Frederick town, Frederick County, State of Maryland, and running northwardly with equal width to the north wall of the stables, fronting on Public Street, and belonging to said hotel, together with all the rights, appurtenances and privileges thereunto belonging or in anywise appertaining." It then fixes the rent which is made payable semi-annually on the 1st of April and October, in each and every year. The lessee then agrees to pay the water rent chargeable upon the premises, not to sell, assign or dispose of his interest in the lease without the assent of the lessor, and to keep "the house and buildings attached and appertaining thereto, furnished and supplied, and open at all proper times as a hotel as heretofore."

The tenant died in 1882, and by his will bequeathed his interest in this lease to his widow, the appellant. When the lease was about to expire the appellant, who was proceeding to remove fixtures, was restrained from so doing by the bill in this case, which was filed by the landlord, and the decree appealed from makes the injunction per-

petual as to the fixtures in controversy, which had been placed upon the premises by the tenant during his holding under his tenancy from year to year and before this lease was executed and accepted by him. The question whether under these circumstances the appellant had the right to remove these fixtures is one of some importance and a new one in this State. Our decisions have gone very far in including buildings and structures within the terms "trade-fixtures," and in recognizing the right of the tenant to remove them, (*Northern Central Railway Co. vs. Canton Co.*, 30 *Md.*, 352); but the precise question now before us has never hitherto arisen for adjudication in our Courts. It has, however, frequently been adjudicated by Courts of high authority in other jurisdictions.

Before considering the authorities bearing directly upon the point, it may be well to state some general propositions about which there seems to be no contrariety of judicial opinion.

We take it then to be clear that the descriptive terms in this lease are sufficient to convey to the lessee the fixtures in dispute if they had been previously placed upon the premises by the landlord, or had been left there by a previous outgoing tenant. There is, it is true, no express covenant on the part of the lessee to keep the premises in repair, and restore them in good condition, yet we hold it to be well settled that independently of any express agreement on the part of the tenant to that effect, and in the absence of the landlord's undertaking to repair, the law imposes upon every tenant, whether for life or for years, the obligation to treat the premises in such a manner that no substantial injury shall be done to them; so that they revert to the lessor at the end of the term unimpaired by any wilful or negligent conduct on his part. 1 *Taylor's Land. & Ten.*, sec. 343; *United States vs. Bostwick*, 94 *U. S.*, 65.

If such then would have been the effect of this lease with reference to these fixtures in the case supposed, and

if it had been made to any one else than the tenant in possession, is there any thing in the circumstances of this case to give it a different operation? As between landlord and tenant the property of the latter in " fixtures" of any description which he has annexed to the demised premises during his term, consists simply in the right or privilege of removing them, and if this is not exercised in due time they become the property of the landlord. In using the term " fixture" we of course use it in its legal sense, as something so attached to the realty as to become for the *time being* a part of the freehold, and as contradistinguished from a mere chattel. When must this right or privilege be availed of? The general rule is that it must be exercised during the term or (as aptly stated by PARKE, B., in *Mackintosh vs. Trotter*, 3 *Mees. & Wels.*, 185,) " during what may for this purpose be considered as an excrescence on the term." In the last edition of his work on landlord and tenant Mr. Taylor states the law thus: " The decisions also agree, that whatever fixtures the tenant has a right to remove, must be removed before his term expires, or at least before he quits possession; for if the tenant leaves the premises without removing them, and the landlord takes possession, they become the property of the landlord. The tenant's right to remove is rather considered a privilege allowed him than an absolute right to the things themselves. If he does not exercise the privilege before his interest expires, he cannot do it afterwards; because the right to possess the land and the fixtures as part of the realty vests immediately in the landlord; and although the landlord has no right to complain if the land be restored to him in the same plight it was before he made the lease, yet if the land is suffered to return to him with additions and improvements, even by forfeiture or notice to quit, he has a right to consider them as part of his property. Nor is this any injustice to the tenant; since it is his own fault if he suffers the land to

return to the landlord with the fixtures annexed. This rule had its foundation in the presumption of abandonment, arising from the conduct of the tenant in quitting the premises and leaving his fixtures behind him; and hence the presumption could not arise, so long as the tenant retained actual possession, even so far as to become a trespasser. But the doctrine has been restricted by later cases to the right of removal only during the original term, and such further time as the lessee shall hold the premises under a right to consider himself a tenant." 2 *Taylor's Land. & Ten.*, (8th *Ed.*,) sec. 551. The same rule is laid down, and the same general view of the authorities taken by the text writers on fixtures. *Tyler on Fixtures, chaps.* 30 *and* 31; *Ewell on Fixtures*, 137, *et seq.*; *Amos and Ferard on Fixtures*, 94; *Gibbons on Fixtures*, 39; *Grady on Fixtures*, 181.

Cases sometimes occur in which it is difficult to fix the precise time when the right of removal ceases, as where the term is of uncertain duration or where a tenant has been allowed to hold over and become a tenant at will or sufferance, but no such difficulty is involved in the present case and we need not, therefore, notice the authorities bearing upon that subject. Here the tenancy by the year was put an end to at a definite period by the notice to quit, and the tenant was left in no uncertainty as to when his term would expire.

Among the English authorities laying down the general rule as above stated, is *Poole's Case*, (1 *Salk.*, 368,) in which Lord HOLT said that *during the term* the soapboiler (the tenant) might well remove the vats as trade fixtures; but *after the term* they became a gift in law to him in reversion, and are not removable. Another is the case of *Lee vs. Risdon*, 7 *Taunt.*, 191, in which GIBBS, C. J., after stating that the right as between landlord and tenant does not depend altogether upon the principle that the articles must continue in the state of chattels, says, " many of these

articles, though originally goods and chattels, yet when affixed by a tenant to the freehold, cease to be goods and chattels by becoming part of the freehold; and though it is in his power to reduce them to the state of goods and chattels again by severing them during his term, yet until they are severed, they are a part of the freehold, as *wainscots* screwed to the wall, trees in a nursery ground, which when severed are chattels, but standing, are part of the freehold, certain grates, and the like. And unless the lessee uses during the term his continuing privilege to sever them, he cannot afterwards do it; and it never, I believe, was heard of, that trover could be afterwards brought." He then refers to the well settled doctrine that a stranger who without right severs and carries away fixtures commits a trespass, and is not guilty of a felony at common law. The more modern English authorities have also followed the law as thus laid down, and we refer, as bearing directly upon the question we are now considering, to *Minshall vs. Lloyd*, 2 *Mees. & Wels.*, 450 ; *Mackintosh vs. Trotter*, 3 *Mees. & Wels.*, 184 ; *Weeton vs. Woodcock*, 7 *Mees. & Wels.*, 14 ; *Davis vs. Jones*, 2 *Barn. & Ald.*, 165 ; *Lyde vs. Russell*, 1 *Barn. & Adol.*, 394 ; *Colegrave vs. Dias Santos*, 2 *Barn. & Cress.*, 76 ; *Roffey vs. Henderson*, 17 *Q. B. Rep.*, 574 ; *Hallen vs. Runder*, 1 *Cromp., Mees. & Roscoe*, 266 ; *Wilde vs. Waters*, 16 *C. B. Rep.*, 637 ; *Pitt vs. Shew*, 4 *Barn. & Ald.*, 206 ; *Pugh vs. Arton, Law Rep.*, 8 *Eq.*, 626 ; *Leader vs. Homewood*, 6 *C. B. N. S.*, 546. Other English decisions bearing upon the same subject are cited and commented upon by the elementary writers above referred to, and also in 2 *Smith's Lead. Cases*, 202. In fact the limitation as to the time within which the tenant's right to remove *fixtures* under any circumstances endures, as pointed out in the earlier cases, was recognized by Lord ELLENBOROUGH in the leading case of *Elwes vs. Maw*, 3 *East*, 38, in which the previous judgment of Lord KENYON in *Penton vs. Robart*, 2 *East*, 88,

is reviewed, and whatever doubts this latter case may have thrown upon the subject are removed by the later decisions, and especially by Baron ALDERSON in *Weeton vs. Woodcock*, who says, "the rule to be collected from the several cases decided on this subject seems to be this: that the tenant's right to remove fixtures continues during his original term and during such further period of possession by him as he holds the premises under a right to still consider himself as tenant."

In this country the decisions are numerous, and almost if not entirely uniform in support of the same general rule. Among them we refer to *Davis vs. Buffum*, 51 *Maine*, 160; *Garfield vs. Hapgood*, 17 *Pick.*, 192; *Allen vs. Kennedy*, 40 *Ind.*, 142; *Davis vs. Moss*, 38 *Penn. State Rep.*, 346; *Beers vs. St. John*, 16 *Conn.*, 322; *Bliss vs. Whitney*, 9 *Allen*, 114; *State vs. Elliott*, 11 *N. H.*, 540; *Reynolds vs. Shuler*, 5 *Cow.*, 223; *Shepard vs. Spaulding*, 4 *Metc.*, 416, and *Preston vs. Briggs*, 16 *Verm.*, 124. In the last cited case REDFIELD, J., in a well considered opinion, gives this terse and, as we think, accurate statement of the law: "It seems equally well settled that all fixtures for the time being are part of the freehold, and that if any right to remove them exists in the person erecting them, this must be exercised during the term of the tenant, and if not so done, the right to remove is lost, and trover cannot be maintained for a refusal to give them up." It is true that modern decisions have, in the interest of trade, greatly enlarged the number of movable or trade fixtures, but they agree with the earlier authorities in limiting the time within which the removal must take place. They hold that the interest which a tenant has in his fixtures consists in the right or privilege of removing them and reducing them again to personal chattels, and that this is a right or privilege which may be lost by not being exercised in due time, or may be voluntarily surrendered, abandoned, or waived. The position sustained by the overwhelming

Carlin *vs.* Ritter.

weight of authority both English and American, and ancient and modern, is that where a tenant quits possession or surrenders the premises unqualifiedly to his landlord without removing or reserving his fixtures, he is understood to make a dereliction of them to his landlord; and the few cases in which the right of property in fixtures has been held to remain unchanged after the termination of the tenancy and the surrender of possession of the premises by the tenant, rest upon the particular attendant circumstances, and may be regarded as exceptional, and they do not invalidate the general rule.  *Tyler on Fixtures*, 453.

From the law as thus stated it clearly follows that if the tenant in this case had, under the notice to quit given in 1880, removed from the premises without severing and taking with him the fixtures in question, they would have become the absolute property of the landlord.  He did not, however, quit the possession, but what he did was this: he recognized the notice as *putting an end* to his tenancy by the year, and accepted from his landlord the lease above referred to, which took effect at the expiration of his yearly tenancy under the notice.  The operative effect of this lease as a conveyance and the implied obligation thereby cast upon the lessee have been already stated.  It is a lease for a term of years to take effect upon the expiration of the prior yearly tenancy, containing terms, conditions and stipulations which did not pertain to the prior tenancy by the year, and which contained *no reservation of the right to remove the fixtures then on the premises;* and it was under this lease that the tenant continued in possession. The question then immediately before us is, what effect had the acceptance of this lease and continuing in possession under it, upon the tenant's right to remove these trade fixtures?  And here again, in answer to this question, all the elementary writers concur in laying down the proposition that if a tenant having the right to remove fixtures erected by him on the demised premises accepts a new

lease of such premises without reservation or mention of
any claim to such fixtures, and enters upon a new term
thereunder, the right of removal is lost, notwithstanding
his actual possession has been continuous.   And the reason
given is because the fixtures set upon the premises at the
time of the lease are part of the thing demised, and the
tenant by accepting a lease of the land without reserving
his right to the fixtures has acknowledged the right of his
landlord to them, which he is afterwards estopped from
denying.   2 *Taylor's Land. & Ten.*, *sec.* 552; *Ewell on
Fixtures*, 174, 175 ; *Tyler on Fixtures*, 437 *to* 439 ; *Grady's
Law of Fixtures*, 98 ; *Gibbon's Law of Fixtures, 43* ; *Amos
and Ferard on Fixtures*, 117 ; 2 *Smith's Lead. Cases*, (*8th
Amer. Ed.*) 214.

The English cases usually cited in support of this
position are *Fitzherbert vs. Shaw*, 1 *H. Bl.*, 258 ; *Heap vs.
Barton*, 74 *Eng. C. L. Rep.*, 273, and *Thrasher vs. East
London Water Works Co.*, 2 *Barn. & Cress.*, 608.   And the
more recent case of *Sharp vs. Milligan*, 23 *Beav.*, 419, was
a case where tenants *in possession* had agreed in writing
to take a lease of the premises from their landlord for the
term of twenty-one years.   Specific performance of this
agreement was decreed ; and in settling the terms of the
lease to be executed the tenants insisted that it should be
so framed as to protect their right to certain fixtures they
had erected on the premises, and they asked this upon the
conceded ground that if not thus protected they would be
estopped by the lease from 'claiming their trade fixtures.
But the Master of the Rolls (Sir JOHN ROMILLY) refused
their request, saying the tenants ought to have introduced
the exceptions in the agreement if they intended their
fixtures should not become the landlord's property.   From
these authorities we cannot doubt that if this case were be-
fore an English Court it would be promptly decided in
favor of the landlord's right to these fixtures.

In this country the question seems first to have arisen in
the case of *Merritt vs. Judd*, 14 *Cal.*, 59, and there the

Court followed the English authorities, saying that upon the execution of the new lease the tenant was in the same situation as if the landlord, being seized of the land, had leased both land and fixtures to him. The same ruling was subsequently made by BRADY, J., in *Abell vs. Williams,* 3 *Daly,* 17, in the Court of Common Pleas for the City and County of New York. A different opinion, however, was expressed by REYNOLDS, J., in the City Court of Brooklyn as reported in the case of *Devin vs. Dougherty,* 27 *How. Pr. Rep.,* 461. But both these latter cases were decisions by Courts of inferior jurisdiction. Finally the question came before the Court of Appeals, of New York, in *Loughran vs. Ross,* 45 *N. Y.,* 792, where it was reasoned out and the authorities reviewed. "In reason and principle" says ALLEN, J., in delivering the opinion in that case, "the acceptance of a lease of the premises, including the buildings, without any reservation of right, or mention of any claim to the buildings and fixtures, and occupation under the new letting, are equivalent to a surrender of the possession to the landlord at the expiration of the first term. The tenant is in under a new tenancy, and not under the old; and the rights which existed under the former tenancy, and which were not claimed or exercised, are abandoned as effectually as if the tenant had actually removed from the premises, and after an interval of time, shorter or longer, had taken another lease and returned to the premises. A lease of land and premises carries with it the buildings and fixtures on the premises, and the tenant, accepting a lease of the premises without excepting the buildings, takes a lease of the lands with the buildings and fixtures, and acknowledges the title of the landlord to both, and is estopped from controverting it." So in Massachusetts, substantially the same doctrine was long ago announced by C. J. SHAW in *Shepard vs. Spaulding,* 4 *Metcalf,* 416, the circumstances of the case differing only in the fact that there was an interval between the surrender of the

interest under the first lease and the granting of the second when the lessor was in actual possession. Then comes the case of *Watriss vs. National Bank of Cambridge*, 124 *Mass.*, 571, which, in its facts, is almost identical with the one now before us, and in which the Court, speaking by ENDICOTT, J., reaffirms the same rule in a very carefully reasoned opinion.

Opposed to this strong array of authority in this country and to the whole body of the English decisions, stands the case of *Kerr vs. Kingsbury*, 39 *Mich.*, 150. This case was decided about the same time as the one last referred to in Massachusetts, and no reference is made in either to the other. The opinion was delivered by Judge COOLEY, but we cannot go along with him in his reasoning. We are not able to discover anything "absurd" in the rule laid down by the other authorities, and certainly not when applied to a case like the one at bar. If it was the intention of the parties in this or any other similar case, that the right to remove fixtures should continue, nothing was easier than to insert in the lease a clause to that effect, and it seems to us reasonable to infer from the absence of such a clause that it was their intention that this right should no longer continue. It is also a rational inference, if not a presumption, that the parties understood what they were doing and what would be the legal construction and effect of the instrument they were executing. That the terms of this lease are broad enough to convey the fixtures, and did convey them, is a proposition about which we cannot entertain a doubt, and if this be so we must assume the tenant knew it. It is also to be noted that this was the first written lease between the parties, and is not simply a renewal of an old one upon the same terms and conditions. Its office was not to effect an extension or a holding over under and upon the terms of an existing lease or a former tenancy, but to *create a new tenancy* upon new and different terms, and *non constat* the landlord

would have granted or the tenant could have procured such a lease, except upon the condition that the fixtures should remain the property of the former and the right to remove them be abandoned. At all events, such, in our opinion, is the construction and effect of this instrument, and we neither know of, nor can we recognize, any "public policy" which ought to induce the Courts to place a different construction, or give a different effect to a lease between landlord and tenant from that given to other contracts between other parties, or to set aside a well settled rule or principle of law, in order to promote the interests of either party thereto.

We therefore affirm the decree so far as it decides that the "trade fixtures" placed upon the premises prior to the year 1880, now belong to the landlord. This part of the decree is supported by a very able opinion of the Court below, found in the record.

We have encountered some difficulty in ascertaining from the record precisely what things the decree covers, because it does not, as as it ought, contain a particular description and enumeration of them. Lists, however, have been furnished us by counsel on both sides, and as they are in substantial agreement, we shall take them as our guide.

The principal things enumerated in these lists are, the bake house and oven, the fountain in the yard, the awning in front of the house, the furnace in the cellar for heating the building, the wash tubs in the laundry, the grates for burning coal fastened into the fire places in the rooms, the inside shutters to the windows, the counter in the office rooms, the counter and shelving in the cigar store, the counter, shelving and mirrors in the bar room, (the mirrors being glasses framed and fastened into panels made in the wall, and not merely framed mirrors hung on hooks,) the shelving in the pantry store room, and the inside iron doors in the stable. We have carefully examined the tes-

Carlin *vs.* Ritter.

timony in the record as to the construction, and the mode of annexation or attachment to the freehold, of all these things, and have also considered the obvious purpose with which they were put upon the premises, and are of opinion they are all "trade fixtures," the right to remove which the tenant, under the view we have above taken of the lease, has lost. So far therefore as the decree covers these things we affirm it.

But the lists also contain the ice house, the cow stable, and the carriage enclosure or covering. From the testimony, the ice house appears to be simply a wooden structure or building *resting by its own weight* on flat stones laid upon the surface of the ground. The earth was not excavated for the purpose of holding the ice, nor was there any other foundation for the building than the stones referred to. *Wansbrough vs. Maton,* 4 *Adol. & Ellis,* 884, was a case where a wooden barn was erected on a foundation of brick and stones let into the ground, on which the barn rested by weight alone, and all the Judges of the King's Bench held it was not a fixture at all. Lord DEN-MAN, C. J., said: "Questions as to fixtures generally arise between the *prima facie* right of the landlord on the one hand, and exceptions in favor of trade or of tenants on the other. But the first question must be whether the erection be a part of the freehold. If it be not united to the freehold we cannot say that it is a part of it; and here it is not so united and, therefore, not a fixture." Many other authorities to the same effect might also be cited, but we deem this one sufficient. The cow stable and carriage covering seem also to be wooden structures of the same character, and not more united to the freehold than the ice house. So far, therefore, as the decree covers these structures, we reverse it.

In the other case, in which Ritter alone is the appellee, precisely the same questions are involved, and the decree

Carlin *vs.* Ritter.

being in the same form, must be disposed of in the same way.

> *Decrees affirmed in part, and*
> *reversed in part, and*
> *causes remanded.*

(Decided 15th March, 1888.)

BRYAN, J., dissented.

A motion was made by the appellant on the 31st of March, 1888, for a re-argument of the above cases, and reasons were filed in support of the motion. The Court overruled the motion, and delivered the following opinion through Judge MILLER:

The motion for a re-argument in these cases is overruled. There is, however, a slight error in the decrees, which must be corrected. The *cigar store* appears not to have been rented to the appellant until April, 1885, which was long after the written lease. Before that time Ritter had rented it to other parties, and it was therefore not embraced in the terms of that lease. The awning in front of it was put up *after* it had been rented to the appellant. The counter and shelving were also put into it at the same time. It is true they were removed to this store from the old barber shop, where they had been put up during the yearly tenancy, but this removal seems to have been made with the implied, if not express, assent of Mr. Ritter. This awning in front of the cigar store, and the counter and shelving in it, must therefore be exempted from the operations of the injunction, and the former opinion is to this extent modified, and the decrees will be corrected accordingly.

(Filed 22nd June, 1888.)