## THE L. A. THOMPSON SCENIC RAILWAY COMPANY *vs.* JOHN YOUNG.

*Removal of Trade Fixtures—Scenic Railway—Restraining Order— Distraint for Rent on Property in Hands of Receiver.*

The lessee of land, where a pleasure resort was to be established, contracted with appellant to construct a scenic railway, consisting of a pavilion and elevated tracks on brick piers together with cars and machinery. It was stipulated that the appellant should retain possession and ownership of the railway and the right to operate it till paid for. A part of the railway was built when the lessee proved unable to complete the improvements and a receiver was appointed to take charge of the property. Upon petition of the appellant leave was granted to remove the railway and pavilion. The landlord then intervened alleging that these were permanent improvements and asking that the appellant be restrained from removing the same. *Held,*

1st. That the railway and the pavilion are trade fixtures and removable as such by the tenant.

2nd. That the landlord is not entitled to prevent their removal by the appellant under the above-mentioned circumstances.

A restraining order in equity when passed before hearing the defendant should not go further than to suspend his action until an opportunity is afforded to answer and defend.

An order granting leave to a landlord to distrain for rent on property in the hands of a receiver should not be passed before the receiver has had notice of the application and an opportunity to be heard.

Appeal from an order for the Circuit Court for Baltimore County (BURKE, J.)

The cause was argued before McSHERRY, C. J., FOWLER, PAGE, BOYD, PEARCE and SCHMUCKER, JJ.

*C. Dodd McFarland* (with whom was *Peter J. Campbell* on the brief), for the appellant.

*John M. Carter*, for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

The appellee leased a tract of vacant land on Middle River, near Baltimore City, to one Adolph Kuehn for a renewable term of ten years.  It was the intention of the lessee to establish a summer resort upon the demised land and equip it with buildings and appliances suitable for that purpose, but the lease contained no covenant or undertaking on his part to do so, although a provision in its last paragraph permitted him at his option to enter upon the land before the commencement of the term to erect any buildings and clear up the ground.

The lessee, with a view to equipping the demised premises with the requisite appliances for the conduct of his proposed summer resort, entered into a written contract with the appellant for the construction by the latter at a cost of $18,000 of what is known as a scenic railway and is used for the amusement of visitors at popular resorts.  The structure described in this contract was a composite plant consisting of an undulating, elevated, circular railway, with a pavilion for a station from which the cars were to start and to which they were to return, also a number of cars and a stationary engine with shafting, band-wheels, belting, &c., by which the road was to be operated.  The foundations under the pavilion were to be brick piers and the entire apparatus, in view of the uses for which it was intended, was to be constructed in a firm and substantial manner. The contract also provided that the appellant should "retain possession and ownership of the railway plant" with the right to operate it until it was paid for, when it was to be delivered to Kuehn, the lessee of the land on which it was to be erected.

The appellant proceeded with the construction of the scenic railway including the pavilion and tracks until it had expended about $8,000 thereon, when it became apparent that Kuehn would fail in the attempt to establish his proposed summer resort. The appellant thereupon filed in the Circuit Court for Baltimore County a bill in equity against Kuehn alleging that it had entered into the contract for the erection of the scenic railway, upon the representation made to it by him that he would also erect on the demised land a casino, a hotel, a dancing pavilion, a bowling alley and billiard rooms, and that he was in a financial condition to do so. The bill further alleged that after commencing the erection of said buildings he had failed to continue the work, and for a month then last past had almost entirely ceased work thereon, and was financially unable to proceed with their erection. It also averred that scenic railways could only be operated profitably where large crowds of persons were collected, and that the $8,000 which it had already expended, and also the sums which it was then currently expending under its contract with Kuehn would be lost unless said buildings were completed. It prayed for a receiver to take charge of the property and for an account of the monies expended thereon by the appellant and the repayment thereof, and for an injunction against the defendant.

On this bill a preliminary injunction was granted, as prayed, on May 11th, 1899, and a receiver was appointed who duly qualified, and on May 20th the defendant answered the bill.

On June 17th the appellant filed a petition in the case repeating the substantial allegations of the bill, and further alleging that there was no prospect that the proposed summer resort would ever be opened, and asking leave to remove its scenic railway, which it asserted remained its property under its contract with the defendant. The receiver answered the petition admitting the facts and consenting that its prayer be granted, which was done by the Court on the same day.

On July 3d, 1899, the appellee, Young, who is landlord of the demised premises, filed a petition in the case then pending in equity between the appellant and Kuehn, in which he alleged the making of the lease and that thereafter Kuehn had commenced to build the pavilion and scenic railway for the pleasure of visitors to the grounds, and that the said structures, especially the pavilion, constituted substantial and valuable permanent improvements, but that the appellant professing to act under the order of the Court of June 17th was rapidly tearing down and removing them from the grounds.   The petition then prayed for an injunction to prevent the further removal of the buildings and for permission to distrain, for rent due, upon the loose lumber and bricks in the hands of the receiver on the demised premises.   Upon this petition of the appellee, who had not theretofore been a party to the case, the Circuit Court passed at once, and without notice to any of the parties to the suit or an opportunity to them to be heard, a final and peremptory order enjoining and restraining the appellant from the further demolition of, or removing, or in any manner interfering with the building or buildings or any part thereof on the demised premises, and also permitting the appellee to distrain upon any distrainable goods found upon the demised premises.   From this order of Court the appeal was taken.   No bond was required of the appellee as a condition of the issuing the restraining order.

The proposition that a tenant cannot remove from demised premises structures erected by him thereon which are so attached to the freehold as to become part of it, is a familiar principle of the common law.

A well-recognized exception, however, to this general rule permits the tenant to remove during his term structures erected by him, designed for the purposes of trade, even though they be so firmly attached to the freehold that he would not otherwise have the right to remove them.   This exception was distinctly recognized in this State in the case of *Kirwan* v. *Latour*, 1 H. & J. 289, and has been repeat-

edly affirmed since that time. *Coombs* v. *Jordan*, 3 Bland, 311; *N. C. Ry. Co.* v. *Canton Co.*, 30 Md. 347.

In the case last cited, the Court in the opinion, when discussing the rule prohibiting a tenant from removing fixtures, say: "This rule is by no means inflexible and without exception. Trade fixtures have been held by the earliest cases in which the question arose to form an exception. No matter how strongly attached to the soil or firmly imbedded in it they are treated as personal property, and as such subject to removal by the person erecting them *  *  *. *Prima facie* a house with its foundation planted in the soil is real property, yet when it is accessory to trade, and in law a trade fixture, we find all the authorities regard it as personal property." This exception in favor of trade fixtures has been held applicable in the cases we have cited to houses, steam engines, furnaces, railway tracks, cider mills and like structures. The real question in such cases is not so much the nature of the structure as the purpose for which it was intended.

The scenic railway under consideration in the present case was a composite affair consisting of a pavilion with a series of undulating elevated tracks starting from and returning to it, with the requisite machinery and apparatus and cars to make flying trips for the amusement of its patrons. It was only available for pleasure resorts and had no general utility. The record shows that Kuehn, the lessee, arranged to have it put upon the demised land as one of the agencies for conducting the business of the summer resort which he intended to establish at that place. It was to all intents and purposes a trade fixture which he could remove at any time before the expiration of his lease. By the terms of the contract between Kuehn and the appellant the latter retained the "possession and ownership" of the plant until it was paid for. When, therefore, he had obtained leave of the Court to take it out of the custody of the receiver, the appellee as landlord of the demised premises could not prevent him from removing it, and for that reason the Court below erred in passing the order appealed from.

The order does not in terms mention the scenic railroad but it is apparent from the contents of the petition upon which it was passed that it was intended to prohibit the removal of the pavilion, which was the only portion of the plant then remaining on the premises. This order, although in form a restraining order, partakes so thoroughly of the nature of an injunction that the propriety of its passage must be tested by the principles applicable to the issue of that writ. Restraining orders are not entirely without precedent in proceedings in equity in this State, but they have rarely been used and then only for temporary purposes, and have always been made interlocutory and not final in their operation. *Burch* v. *Scott*, 1 Bland. 123–4 ; *Murdock's case*, 2 Bland. 471–2 ; *Bonaparte* v. *Lake Roland R. R. Co.*, 75 Md. 340.

Such orders, if used at all, should, when they are passed at the time of the filing of the bill or petition and before answer or hearing of the defendant, never go further than to suspend his action until an opportunity is afforded him to answer and defend, and they should be preliminary in form and give the defendant an early day on which to move for their rescission. In other words, such orders must be governed by the principles applicable to the issue of preliminary injunctions which it is well settled must not determine any right nor necessarily prejudice either party but simply preserve the property or fund in controversy until the further order of the Court. *Ches. & Ohio Canal Co.* v. *Young*, 3 Md. 489 ; *State* v. *N. C. R. Co.*, 18 Md. 213 ; *Clayton* v. *Shoemaker*, 67 Md. 219. So much of the order appealed from as was prohibitory in its provisions was for that reason also erroneously passed.

The latter part of the order, permitting the appellee to distrain on any distrainable goods on the demised premises for rent then due, was in principle in accordance with the rulings of this Court in the cases of *Everett* v. *Neff*, 28 Md. 178, and *Gaither* v. *Stockbridge*, 67 Md. 222, but there should have been notice to the receiver and an opportunity

to be heard before the order was passed.   As the principle of the part now under consideration of the order is correct we would not reverse the action of the Court below for the mere failure to give notice and an opportunity to be heard to the receiver who is only an officer of the Court and has no personal interest in the controversy, but the order must be reversed because of the other errors stated in this opinion.

> *Order appealed from reversed with costs.*

(Decided December 9th, 1899).