## JOHN RASCH, Trading as John Rasch Company,

### vs.

## SAFE DEPOSIT AND TRUST COMPANY, Trustee.

*Landlord and Tenant—Removal of Fixtures—Express Stipulations—Construction—Renewal of Lease.*

The general right of a tenant to remove fixtures and articles of personal property may be controlled by an express contract, but covenants restricting the tenant's ordinary right to remove such property are always strictly construed and cannot be extended by implication. p. 438

Where the lease provided that the lessees "will not make any substantial alterations without the consent of the lessors," and that "all improvements which they may be permitted to make" shall become the property of the lessors, *held* that the improvements which became the property of the lessors were confined to those in the nature of alterations, which could not be made without the lessor's consent, and did not include an elevator, with its necessary motor and machinery, installed by the lessee in an elevator shaft in existence at the time of the lease. p. 440

A provision in a lease against "substantial alterations" by the lessee without the lessor's consent, *held* not to apply to the installation of an elevator in an elevator shaft already existent. p. 441

Code, Art. 53, Section 28, providing that "the right of a tenant to remove fixtures erected by him under one demise or term shall not be lost or in any manner impaired by reason of his acceptance of a new lease," *held* applicable although the first lease was to "J. R.," and the new lease to the "J. R. Co., Inc.," practically all of the stock of the latter being owned by J. R., and the agreed statement of facts regarding and treating J. R. as the lessee. pp. 442, 443

Code, Art. 53, Section 28, providing that the right of a tenant to remove fixtures shall not be lost or impaired by reason of his acceptance of a new lease, applies in favor of an assignee of the leasehold to whom fixtures annexed by the previous tenant were also transferred. p. 444

*Decided June 16th, 1920.*

Appeal from the Superior Court of Baltimore City (BOND, J.).

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS and OFFUTT, JJ.

*Wilson J. Carroll,* for the appellant.

*Eli Frank,* with whom were *Frank, Emory & Beeuwkes* on the brief, for the appellees.

PATTISON, J., delivered the opinion of the Court.

This is an appeal from a judgment obtained by the appellees against the appellant in the Superior Court of Baltimore City.

The case was tried below upon an agreed statement of facts showing that on or about the 26th day of January, 1909, Mary F. Reitz, predecessor in title of the appellees herein, executed unto the appellant, John Rasch, individually, a lease of the premises, No. 227 Hanover Street, in Baltimore City, for a term of five years. During the existence of this lease, "The John Rasch Company" was incorporated. Its stock, with the exception of three shares, was held by John Rasch.

On the 17th day of March, 1914, a second lease was executed by Lewis M. Reitz and Letitia F. Reitz, life tenants under the will of Harry C. Reitz, and the Safe Deposit & Trust Company, as lessors, and The John Rasch Company, Inc., as lessee. This lease was for the term of five years, commencing on the first day of January, 1914, and terminating on the first day of January, 1919.

The John Rasch Company, Inc., was dissolved about May 1st, 1918, and the stock and fixtures of said corporation were turned over to the defendant, John Rasch.

On the 31st day of December, 1918, a third lease was executed, in which the Safe Deposit & Trust Company of

Baltimore, Trustee, is named as lessor, and John Rasch, trading as John Rasch Company, as lessee. The term of this lease began on the 31st day of January, 1919, and ended on the 31st day of March, 1919.

It appears from the record that the lease of January 26th, 1909, has been lost, but it is agreed that it "contained substantially all the covenants and conditions contained in the lease dated the 17th day of March, 1914," a copy of which is found in the record.

The leased premises were leased to the lessee under the different leases for the sole purpose of "conducting therein a liquor and grocery business."

The lease of the 26th day of January, 1909, as well as the subsequent lease of the 17th day of March, 1914, contained the provision that the lessees "will not make any substantial alterations in said premises without the consent of the parties of the first part hereto first being had and obtained, * * * and that all improvements which they may be permitted to make, shall at the expiration or other termination of the tenancy hereby created, be and become the property of the said parties of the first part," the lessors.

Prior to the execution of the lease of January 26th, 1909, there was a shaft in the leased building, but no elevator. A block and fall was used in the shaft. After its execution, an elevator worked by hand was erected, but before the expiration of the lease, it was removed and another, electrically driven, with motor and machinery, was installed in its place. This elevator, which was attached to the building by bolts and nuts, remained upon the premises until just prior to the 31st day of March, 1919, when, without the knowledge and consent of the plaintiffs, it, with the motor and machinery, was removed by the defendant, without injury to the building other than the holes in the shaft caused by the withdrawal of the bolts. After its removal it was sold by the appellant for the sum of $100, and afterwards bought by the appellees and reinstalled in the building at a cost to them

of $925, the amount of the judgment recovered in this case, which it is agreed was a reasonable cost for such installation.

It is shown by the agreed statement of facts that all errors of pleadings were waived and it was agreed that the case should be treated as though the pleadings were properly at issue.

The claim is made by the appellees that under the terms and provisions of the lease, the elevator, motor and machinery, installed by the lessee, were improvements that became the property of the lessors at the expiration or termination of the tenancy and should not have been removed from the premises by the lessee.

In determining this question the intention of the parties gathered from the terms and provisions of the lease must be ascertained.

The general right of a tenant to remove fixtures and articles of personal property may be controlled by an express contract between the parties, but covenants restricting, or claiming to restrict, the tenant's ordinary right to remove such property are always strictly construed and cannot be extended by implication. *Fox* v. *Lynch*, 71 N. J. Eq. 537; *Montello Brick Co.* v. *Trexler,* 167 Fed. Rep. 483.

In *Lindsay Bros.* v. *Curtis Publishing Co.*, 236 Pa. St. 229, 42 L. R. A. (N. S.) 546, the language of the lease there involved was very similar to that found in the lease before us. In that case the premises were leased to be used as a printing and publishing establishment.

The lease provided that the lessee should not make alterations, additions or improvements to the premises without the written consent of the lessors and that "after such consent has been given, unless otherwise agreed upon in writing, all alterations, additions and improvements made by the lessee at his own expense, upon the premises, shall at the option of the lessor remain upon the premises at the expiration "of the lease, and become the property of the lessor."

The lessee installed its presses and printing machinery in the building and as a part of its plant put in electric power and lighting appliances to furnish power and light for its presses. Presses were bolted to the floors and the wires were placed in conduits fastened to the walls but not imbedded therein. The lessee, in attempting to remove the electric wiring, conduits and switchboard from the demised premises at the termination of his tenancy, was restrained by injunction issued by the lower Court.

The Court in that case, in reviewing and reversing the action of the lower Court in granting the injunction, said: "We are clear that in the lease now before us the agreement that the 'alterations, improvements and additions,' made by the tenant should remain upon the premises and become the property of the lessor was intended to apply to alterations, improvements and additions to the building, or to what was in the nature of a building, and not to machinery, or that which is in the nature of machinery or other apparatus forming a part of the contents of the building and introduced into it by the tenant, in pursuance of the business for which the building was leased. * * * Nor do we find in the language of the lease any compelling reason requiring the words 'alterations, improvements and additions' to be extended in their application to anything more than the building. We see neither necessity for, nor any propriety in, holding that they should be so extended as to deprive the tenant of the right to remove personal property placed by it upon the premises during the term of the lease. * * * The same sound policy of the law which favors a tenant in the matter of the removal of trade fixtures, requires that in the construction of an agreement containing words whose meaning is doubtful, the construction of the words most favorable to the tenant shall prevail. Nothing short of the clearest expression of an agreement by the parties to that effect can justify the extension of the grasp of the landlord so as to cover chattels or personal property brought upon the premises by the tenant in

pursuance of the business for which the premises were leased. We find no such clear agreement in the language of the lease which constitutes the contract between the parties in this case."

The inquiry in this case is whether the installation of the elevator and the motor and machinery thereto attached were intended by the parties to be included in the term "improvements" as used in the lease.

The language of the lease is that the lessee "will not make any substantial alterations in said premises without the consent" of the lessors, "and that all improvements which they may be permitted to make shall at the expiration * * * of the tenancy * * * become the property" of the lessors.

The meaning of this language is that the lessee was to make no substantial alterations in the premises without first obtaining the permission of the lessors to make such alterations, and when their permission was obtained and the improvements were made, the same were to remain upon the premises at the expiration of the tenancy and were at such time to become the property of the lessors. "Improvements" and "substantial alterations" are interchangeably used as meaning the same thing. The contemplated improvements which were to become the property of the lessors were confined to improvements in the nature of alterations to the premises or building, that required the permission of the lessors before the same could be made by the lessee.

The shaft in which the elevator was installed was in the building at the time of the execution of the lease of January 26th, 1909. At that time no elevator had been installed by the lessors. The shaft had been erected in order that an elevator might at sometime be operated in it, and whenever this was done holes through the shaft, such as those mentioned herein, would be necessary in its installation. A block and fall was for a time used in the shaft, but owing to the increase in lessee's business, he discontinued its use and erected a hand elevator therein, and when his business still

further increased he removed the hand elevator and installed an electrically driven elevator. This was all done that he might better enjoy the use of the leased premises in the management and conduct of his business.

The supplying by the lessee of the hand elevator and then the electrically driven elevator with the necessary motor and machinery, which the lessors had failed to provide, though contemplated at the time of the erection of the shaft, were not alterations in the building or premises, nor improvements for which the lessee, under the covenants contained in the lease, had first to obtain the permission of the lessors before he could make the same, or at least it is not clear from the language used, considered in connection with the facts and circumstances disclosed by the statement of facts, that the installation of such elevator, motor and machinery was intended by the parties to be included in the "improvements" that were to become the property of the lessors at the expiration of the lease or termination of the tenancy, and it is from the particular facts and circumstances in each case that the intention of the parties must be ascertained.

The further claim is made by the appellees "that the appellant, as tenant under the first lease of January 26th, 1909, having left the said elevator, motor and machinery upon the said premises after the expiration of the term of said lease, thereafter lost the right to remove them as trade fixtures, assuming them to have been trade fixtures, and even assuming that they were not improvements within the meaning of the covenants of said lease."

This Court, in *Carlin* v. *Ritter,* 68 Md. 478, stated the rule as established by the modern decisions to be "that where a tenant quits possession or surrenders the premises unqualifiedly to his landlord, without removing or reserving his fixtures, he is understood to make a dereliction of them to his landlord," and the rule so recognized was followed in *Bauernschmidt Co.* v. *McColgan,* 89 Md. 135; but in 1898 the Legislature of this State passed a statute, Chapter 92, Sec. 27

(Code, Art. 53, Sec. 28), which provides that "the right of a tenant to remove fixtures erected by him under one demise or term shall not be lost or in any manner impaired by reason of his acceptance of a new lease of the same premises without any intermediate surrender of possession."

The appellees contend, however, that this statute has no application to this case "because the second lease, that of March 17th, 1914, was to a different tenant, the corporation, The John Rasch Co., Inc."

In support of this contention, the appellees offered their first prayer in the Court below, which was refused. The Court, we think, acted properly in refusing to grant this prayer.

The lease of January 26th, 1909, was to John Rasch, individually, but while it was in force and before its termination, the John Rasch Co. was incorporated and the property of John Rasch, consisting of the stock and fixtures, was taken over by the corporation, which was thereafter treated and recognized by the lessor as her tenant.

At the expiration of this first lease, the lease of March 17th, 1914, was executed. This lease was to the then existing tenant and the owner of said trade fixtures, the John Rasch Co., Inc. While this lease was in force and before its termination the John Rasch Co., Inc., was dissolved and the stock and fixtures turned over to John Rasch, who was again recognized and treated as the tenant by the lessors.

At the expiration of this second lease, the third lease was executed on the 31st day of December, 1918. This time, John Rasch (the then existing tenant), trading as The John Rasch Co., was named as lessee.

The first lease was to John Rasch, individually. The second was to the corporation, the stock of which with the exception of three shares was owned by John Rasch, and the third lease was to John Rasch, trading as The John Rasch Co., Inc. In two of these leases, John Rasch was the lessee and in the other the owner of practically all of the stock of

the lessee corporation. That he was, by the lessors, regarded as the lessee in each and all of these leases is shown by the agreed statement of facts in which it is said, "the lease of the 26th of January, 1909, was duly executed by Mary S. Reitz, the predecessor in title of the plaintiffs herein and the *defendant:*" that "the lease of the 17th of March, 1914, was duly executed by the *parties hereto,*" one of them being John Rasch, trading as The John Rasch Co.; and "that on the 31st day of December, 1918, a lease was entered into between the Safe Deposit & Trust Co. of Baltimore, Trustee, one of the plaintiffs herein, and the *defendant* herein."

It will thus be seen that by the agreed statement of facts John Rasch was regarded and treated by the lessors in all of said leases as the lessee of the premises.

In *Bauernschmidt Co.* v. *McColgan, supra,* McColgan leased to Klise property in Baltimore City for the term of one year beginning on the first day of April, 1895. Klise occupied the property but a short time and on April 30th assigned the lease to Wineke who, having entered into possession, made such changes in the building as to him seemed to be requisite for the conduct of his business, and on the 17th day of October, 1895, he assigned the lease and turned over the possession of the property to Alfred R. De Alba. On the 2nd day of April, 1896, De Alba took from McColgan a new lease of the property for the term of one year from the first day of April, 1896. In the lease there was no reference made to the former lease and there were no reservations of the right of the tenant to the fixtures that were placed in the building by a former tenant. DeAlba remained in possession of the premises until the 16th day of July, 1896, when he vacated. A few days before he left, Bauernschmidt Co. to whom a bill of sale transferring the said fixtures had been executed, entered upon the premises and removed them, claiming his right to it under the bill of sale.

The Court in that case held that in as much as the lessee, De Alba, accepted from the landlord a new lease without reservation of said fixtures, his right to remove them was lost

and they were considered as having been surrendered to the landlord at the expiration of the first term.

The Court, however, in that case, after holding that the Act of 1898, Chapter 92, had no application thereto, as the rights of the parties accrued before its passage, speaking through JUDGE PAGE, said that the fixtures became a part of the freehold "and the full extent of De Alba's right was to restore them to their condition as chattels at any time during the term. If he failed to exercise that right at the end of the term, the landlord's right to possess the land and the fixtures as part of it immediately vested."

In so holding, the Court treated De Alba, the assignee of the lease and the party to whom the fixtures had been transferred by a former tenant, in the same position in respect to the right of removal as the tenant making such improvements.

The John Rasch Company, the assignee of the original tenant, John Rasch, and the owner of the fixtures under a transfer from him and the accepted tenant of the lessors, was not, under a proper construction of the statute, required to remove the fixtures at the expiration of the tenancy under the lease of January 26th, 1909, or to reserve its rights therein by any provision inserted in the lease executed as of March 17th, 1914, in order to retain its right to said fixtures. Any other, we think, would be too narrow a construction of the statute.

The Court, in our opinion, should have granted the instructions asked for by the defendant, that the case be withdrawn from the consideration of the jury, and consequently we must reverse the judgment below.

> *Judgment reversed without a new trial, with costs to the appellant.*