# TEDDY-ROSE ENTERPRISES, INC. v. HARTFORD FIRE INSURANCE COMPANY

[No. 1100, September Term, 1980.]

*Decided April 14, 1981.*

The cause was argued before GILBERT, C. J., and LISS and MACDANIEL, JJ.

*Saul M. Schwartzbach,* with whom were *Schwartzbach & Wortman* on the brief, for appellant.*

*Alan R. Siciliano,* with whom were *O'Malley, Miles, Farrington & McCarthy* on the brief, for appellee.

LISS, J., delivered the opinion of the Court.

---

*Note: *Certiorari* denied, Court of Appeals of Maryland, September 9, 1981.

Teddy-Rose Enterprises, Inc., appellant, sued Hartford Fire Insurance Company, appellee, in the Circuit Court for Prince George's County, claiming that the latter was liable to it for losses sustained from the destruction by fire of improvements and betterments made by appellant to a property located in Prince George's County.

The record discloses that on December 2, 1976, Charles J. Paiano entered into a lease agreement whereby he agreed to rent from Larry Millison the property here involved to be used as a bar, liquor store, and restaurant. The lease was for a term of five years, to run from January 1, 1977 through December 31, 1981, with a five year option to renew. The lessee began to make structural improvements to the leased premises but became ill prior to the completion of these improvements.

On August 20, 1977, Paiano entered into an agreement of sale by the terms of which he agreed to sell all his right, title, and interest in the premises, including the liquor license, to the appellant for a sum of $45,000. The sale included all leasehold improvements made by the seller as well as fixtures, equipments, signs, utensils, tools, stock in trade and other various items which Paiano had a "legal" right to transfer. In addition, Paiano conveyed to appellant the seller's rights under the lease, with the agreement that appellant would negotiate a new lease at the time of settlement. All the transactions involving the sale of the leasehold were done with the knowledge and approval of Larry Millison, the landlord.

On August 20, 1977, the same day the agreement of sale was signed between Paiano and appellant, appellant renegotiated the terms of the leasehold interest and a second lease between appellant and Larry Millison was executed. This lease was to run from September 1, 1977, until August 31, 1981, with an option to renew for five additional years. The terms of this lease were essentially the same as the December 1976 lease between Paiano and Millison.

Appellant took possession of the premises and resumed and completed the improvements Paiano had begun. Appel-

lant also procured a fire insurance policy from appellee, commencing in November of 1977 for a period of one year.

On December 4, 1977, the premises were destroyed by fire. Pursuant to the terms of the policy, appellee paid to appellant the sum of $44,243.25. This figure represented the value of the building and its contents, including fixtures, furniture and leasehold improvements. Adjustments were made for depreciation and the deductible as stated in the policy. Of that amount, $2,797.10 was for leasehold improvements to the premises after the owner entered into the lease with appellant. Appellee refused to pay on the loss to the improvements made by Paiano before the sale of the premises to appellant.

The matter came to trial without a jury and at the close of the evidence the trial judge denied appellant any recovery for the value of improvements made by Paiano. From this judgment, this appeal was filed. Three issues are raised to be determined by this Court:

1. Was appellant entitled to compensation for losses from the destruction by fire of improvements and betterments made to the demised premises by Paiano?

2. Was appellant entitled to compensation for losses from the destruction by fire of improvements and betterments it made to the demised premises after September 1, 1977?

3. Was there sufficient evidence from which the trial judge could determine the value of betterments and improvements made by appellant?

1.

The relevant language contained in the insurance policy in dispute provides as follows:

> This coverage shall also include Tenant's Improvements and Betterments when not otherwise specifically covered. Tenant's Improvements and Betterments means the named Insured's use interest and fixtures, alterations, and installations or additions comprising a part of the buildings

occupied but not owned by the named insured and made or acquired at the expense of the named insured exclusive of rent paid by the named insured but which are not legally subject to removal by the named insured.

We agree with the trial judge in his holding that any improvements made by the appellant after September 1, 1977 were covered under the terms of the policy. Appellee does not dispute this holding but contends that the compensation due to appellant under this ruling was included in the monies paid to the appellant pursuant to the policy. The dispute concerns the contested right of appellant to recover under the policy for improvements made by Paiano before he entered into his contract of sale with the appellant. It is conceded by both parties to this appeal that improvements of a structural nature made on a leasehold premises by the lessee becomes the property of the lessor upon termination of the lease. *Bauernschmidt Brewing Co. v. McColgan,* 89 Md. 135, 42 A. 907 (1899).

The appellant seeks to avoid the implications of this long recognized principle by contending that it was an assignee of Paiano's lease and that in being such an assignee, it retained uninterrupted possession of the leased premises until the new lease between Millison and appellant was executed. Appellant further contends that the premises and the improvements made thereon never reverted to the landlord so as to vest the landlord with ownership of the improvements made by Paiano. We do not agree.

The record does not substantiate appellant's contention that the parties contemplated an assignment of Paiano's lease. The lease clearly states that the tenant "will not at any time assign this agreement or sublet the property thus let or any portion thereof without the consent in writing of said landlord." It is conceded that no such written consent to an assignment of the lease was ever sought by the tenant or given by the landlord. The agreement of sale, and particularly paragraphs six and nine of that agreement, indicate the intention of the parties. Those sections read, in pertinent part, as follows:

(6) Included in this sale are all of the seller's rights under the present lease on the premises dated December 2, 1976, it being understood, however, that at the time of the settlement hereof purchaser shall execute a new lease, which shall supersede seller's present lease, which shall then be void.

(9) This agreement and settlement hereunder is conditioned entirely upon purchaser receiving from the landlord a commitment for a *new lease of five years* with an additional five-year renewal option. . . . (Emphasis added)

It is evident from this language that no assignment was contemplated by the parties.

Under the common law of fixtures, a tenant has been held not to be entitled to remove from leased premises things of a personal nature or other structures erected by the tenant which have been so fixed to the land as to become a part thereof and to be deemed "fixtures." Once personalty has become a fixture, it is held to have become a part of the property to which it is affixed and cannot be removed unless it falls within the trade fixture exception. *See Rasch v. Safe Deposit & Trust Co.,* 136 Md. 435, 111 A. 121 (1920); *Thompson Scenic Ry. Co. v. Young,* 90 Md. 278, 44 A. 1024 (1899); *Bauernschmidt Brewing Co. v. McColgan, supra; Allentown Plaza Associates v. Suburban Propane Gas Corp.,* 43 Md. App. 337, 405 A.2d 326 (1979).

The early case of *Carlin v. Ritter,* 68 Md. 478, 13 A. 370 (1888) discussed the law as to landlords' and tenants' rights with respect to fixtures and trade fixtures. In *Carlin,* the owner of a hotel rented the premises and building to a tenant on a year-to-year lease. During the course of the tenancy the tenant erected certain buildings and trade fixtures in and on the demised premises. Later the landlord notified the tenant to quit the premises at the expiration of the then existing year-to-year term. Instead, the tenant negotiated a new five year lease with the landlord. The new lease made no mention of the fixtures and trade fixtures on the premises and included no reservation of the right of

removal of the fixtures or trade fixtures on behalf of the tenant. The tenant died during the term of the five year lease and bequeathed his interest in the lease to his widow. At the expiration of the five year term the widow attempted to remove the improvements and trade fixtures from the premises and the landlord obtained an injunction restraining her from removing them. In discussing the respective rights of the parties, the Court of Appeals stated:

> The position sustained by the overwhelming weight of authority both English and American, and ancient and modern, is that where a tenant quits possession or surrenders the premises unqualifiedly to his landlord without removing or reserving his fixtures, he is understood to make a dereliction of them to his landlord. . . . [citation omitted.]
>
> From the law as thus stated it clearly follows that if the tenant in this case had, under the notice to quit given in 1880, removed from the premises without severing and taking with him the fixtures in question, they would have become the absolute property of the landlord. He did not, however, quit the possession, but what he did was this: he recognized the notice as putting an end to his tenancy by the year, and accepted from his landlord the lease above referred to, which took effect at the expiration of his yearly tenancy under the notice. The operative effect of this lease as a conveyance and the implied obligation thereby cast upon the lessee have been already stated. It is a lease for a term of years to take effect upon the expiration of the prior yearly tenancy, containing terms, conditions and stipulations which did not pertain to the prior tenancy by the year, and which contained no reservation of the right to remove the fixtures then on the premises; and it was under this lease that the tenant continued in possession. The question then immediately before us is, what effect had the acceptance of this lease and continuing in possession

under it, upon the tenant's right to remove these trade fixtures? And here again, in answer to this question, all the elementary writers concur in laying down the proposition that if a tenant having the right to remove fixtures erected by him on the demised premises accepts a new lease of such premises without reservation or mention of any claim to such fixtures, and enters upon a new term thereunder, the right of removal is lost, notwithstanding his actual possession has been continuous. And the reason given is because the fixtures set upon the premises at the time of the lease are part of the thing demised, and the tenant by accepting a lease of the land without reserving his right to the fixtures has acknowledged the right of his landlord to them, which he is afterwards estopped from denying. [citations omitted.] 68 Md. at 487-88.

The Court of Appeals followed this decision in *Bauernschmidt Brewing Co. v. McColgan, supra,* where the Court held that if a tenant has reserved the right to remove certain fixtures from the demised premises and he subsequently executes a new lease without such a reservation, the right of removal is lost and the fixtures are considered to be surrendered to the landlord. The Court further held that where a tenant executes a bill of sale of the premises, the right to remove fixtures does not carry over to the third party after the execution of a new lease.

As a result of *Carlin* and *Bauernschmidt, supra,* the Maryland Legislature adopted in 1898 Article 21, Section 8-209 of the Annotated Code of Maryland (now Section 8-114 of the Real Property Article (1974)), which provides:

8-114. The right of a tenant to remove fixtures erected by him is not lost or impaired by his acceptance of a subsequent lease of the same premises without any intermediate surrender of possession.

The Court of Appeals concluded in *Rasch v. Safe Deposit & Trust Co., supra,* that a party to whom a tenant has assigned a lease occupies the same position relative to removing the fixtures as the tenant who installed them. Appellant contends that there had been a valid assignment of Paiano's lease and a subsequent renewal of the lease. Under the authorities cited herein, appellant would then have an insurable interest under the policy issued by appellee. However, the facts in the case at bar fail to establish that a valid assignment of the lease was ever contemplated or consummated by the parties. Rather, the evidence supports the contrary; *i.e.,* that Paiano's lease was to be terminated and a new lease was to be negotiated by the landlord and appellant. Appellant failed to negotiate in his new lease any reservation to remove the fixtures and the absence of such a clause operates so as to vest ownership of the fixtures in the owner of the property. We therefore conclude that appellant could obtain no insurable interest in the improvements and betterments erected by Paiano.

## 2 & 3.

It is contended by the appellee that the value of the improvements and betterments to the premises made by appellant after it took possession were included in the sum paid to the appellant. Even if we accept appellant's contention that the check did not include the betterments and improvements made by the appellant after September 1, 1977, we are faced with the fact that the trial judge concluded that the appellant failed to meet its burden of proof as to the damages which it sustained.

Our reading of the record extract does not convince us that the trial judge was clearly erroneous. In the absence of such a conclusion we are constrained under the terms of Rule 1086 of the Maryland Rules of Procedure to affirm the conclusion of the trial judge.

> *Judgment affirmed; costs to be paid by appellant.*