MARINETTE IRON WORKS CO. *v.* CODY.

1. PAYMENT—ACCEPTANCE OF DRAFT.

The taking by a vendor of the vendee's acceptance for the purchase price of the goods sold does not operate as a payment, where the parties regard the acceptance merely as evidence of the amount to be paid.

2. LIEN FOR MACHINERY—WHEN LOST—AUTHORITY OF AGENT.

The vendor's right to enforce a lien upon machinery furnished to the lessees of a mill is not lost by the action of his attorney in taking from the vendees a bill of sale of the machinery, where the attorney's authority to accept a bill of sale was conditioned upon his securing the right to remove the property, and the consent of the mill owner to such removal was not obtained.

3. SAME—FORFEITURE OF LEASE.

The vendor's lien upon machinery furnished to the lessees of a mill, existing under Act No. 179, Pub. Acts 1891, as amended, is not defeated by the forfeiture of the lease, although the lease provided that "all machinery added to the mill shall, at the termination of the lease, whether by forfeiture or otherwise, remain in the mill as the property of the lessor."

Appeal from Chippewa; Steere, J.   Submitted January 8, 1896.   Decided February 26, 1896.

Bill by the Marinette Iron Works Company against Lorenzo J. Cody, Fred Proctor, and John F. Carver, to enforce a lien for machinery sold. From a decree dismissing the bill, complainant appeals. Reversed.

*Clark & Pearl,* for complainant.

*Horace M. Oren (George A. Cady,* of counsel), for defendant Carver.

LONG, C. J.   This bill was filed to establish and enforce a lien under the provisions of Act No. 179, Pub.

Acts 1891, and the amendments thereto, against certain property at what is known as "Sailors' Encampment," an island in the St. Mary's river.

Defendant Carver was the owner of this property, and on December 7, 1892, he executed a lease thereof to defendant Cody. The lease was recorded in the office of the register of deeds, as being situate in the county of Chippewa, and known as the "mill property at Sailors' Encampment," more particularly described as follows, to wit: "Including herein the real estate, with the mill and the other buildings thereon, lately owned by John X. Russell, together with all the loose personal property, mill fixtures, etc., belonging to said mill." The term for which the lease was made was from December 7, 1892, until December 7, 1897, "unless such term is before then terminated, by forfeiture or otherwise." The rent reserved was the sum of $2,000 per year, and also all taxes and assessments that might be levied upon such property, which defendant Cody agreed to pay in semi-annual installments. The lease contained the provision that no assignments should be made without the written assent of the lessor, and a condition that, if the rent was not paid as stipulated, the lessor might declare it at an end, and might re-enter into possession, and that the second party should surrender the premises upon such forfeiture by reason of nonpayment. The lease further provided that—

"All improvements and additions made to said mill property by said party of the second part during the term of this lease shall be furnished by the party of the second part, and paid for at his cost; and it is expressly agreed between the parties to this lease that all such additions to the mill property, whether it be in buildings, or machinery, or tools, or anything necessary to operate the mill, shall, at the termination of this lease, whether by forfeiture or otherwise, remain in the mill, and on said premises, as the property of the party of the first part."

Defendant Cody went into possession of the property after the execution of this lease, and took as a partner in the milling business defendant Proctor.

The complainant in this case is a manufacturing corporation at Marinette, Wisconsin. On April 22, 1893, the complainant sold a band mill outfit and other mill machinery to Cody & Proctor for the sum of $5,782, to be put in the mill on the land in question at Sailors' Encampment. The mill was shipped to Cody & Proctor, and the complainant drew a draft, on April 22, 1893, upon Cody & Proctor, for the amount of the purchase price. This draft was accepted, by writing across the face of it the words, "Accepted May 6, 1893," and signed by Cody & Proctor. This was after the machinery had arrived at the mill. The draft was protested for nonpayment on July 24th, thereafter. After Cody & Proctor had made default in payment of this draft, they made a proposition to Hurst & Sullivan, attorneys at Sault Ste. Marie, that they would make a bill of sale of the machinery purchased from complainant for $4,000, and allow the complainant to take judgment for the balance. This proposition was submitted by Hurst & Sullivan to the complainant in a letter dated December 1, 1893. On December 8th the complainant acknowledged receipt, and stated:

"If they have absolutely nothing, then we would prefer by all means to have the bill of sale stipulated for the full amount of our claim, at least that of the invoice price, provided, however, the title should be absolute with us, and also that a reasonable time for the removal of the machinery could be secured."

It was further stated in the letter:

"If there is any property belonging to Cody & Proctor against which a judgment would be applicable, then we would take judgment; if not, the bill of sale should be for the full amount of the invoice."

December 11th Hurst & Sullivan wrote the complainant as follows:

"We have this day, in conformity to the suggestion made in your letter of the 8th inst., obtained bill of sale of the property sold by you to Cody & Proctor for the full amount of your claim. Mr. Carver, the lessor, has a

lease, so we understand, with some stringent conditions, and of which we were solicitous that he might make you some trouble; not that we think it would avail him anything. So we think better to advise you to move the machinery at once, if you can possibly do it to any advantage. We have this day placed the bill of sale upon record."

The machinery was not removed from the premises, when, on January 31, 1894, defendant Carver gave notice of the forfeiture of the lease by reason of nonpayment of the rent reserved therein; and on February 19th defendant Cody wrote a letter to him that he surrendered all claim under the lease, and Mr. Carver went into possession. Prior to that time, and on June 23, 1893, the complainant had caused to be filed in the office of the register of deeds of Chippewa county a statement and claim of lien upon the lands covered by the lease from Carver to Cody and of the property situate thereon. The certificate and statement of lien recites that "the furnishing of said materials, machinery, etc., was begun on the 5th day of May, 1893, and the last of such materials, machinery, etc., was furnished on the 5th day of May, 1893," and that the amount due the complainant, for which the lien was sought, was $5,782.

On the hearing, the complainant gave testimony that it did not take the draft of Cody & Proctor as payment for the machinery, but simply as evidence that Cody & Proctor were to pay the amount thereof for the machinery in 90 days from its date.

Complainant wrote Hurst & Sullivan, December 15, 1893, as follows:

"You appear to have acted in this matter in disregard of our instructions, which contemplated that we should get the absolute title to the property without complications, and a reasonable time for its removal. It seems that we are still exposed to the liability of litigation with Mr. Carver, whom we take to be the owner of the property. * * * If we get nothing by the bill of sale, we do not desire to be bound by it; but, in view of the unfortunate complications which have arisen in this matter, we would

be willing to relinquish our interest in the property to Mr. Carver for not less than fifty cents on the dollar of our original claim. If that cannot be done, and the bill of sale is not sufficient to pass the title and right of possession to us, we want you to take immediate action, and reinstate the pending suit, or file a new bill, if you think that is safe to do, so that our rights may not be extinguished by lapse of time."

Under this state of facts, it was claimed by the complainant, on the hearing below:

1. That the letter from the complainant to Hurst & Sullivan did not authorize them to take a bill of sale of the property, except upon certain conditions, which were not complied with.

2. That a time draft did not release its lien upon the mill machinery, as it was not intended as payment.

3. That it was entitled to have its statutory lien enforced against the property, and that the relations existing between Cody & Proctor and Carver are such that the complainant has a lien on the property for the purchase price, both against Cody & Proctor's interest, and that of Carver in the mill and machinery and land.

4. That, even if the lien could not reach Carver's interest in the land, the forfeiture of the lease to Carver would not give him the right to hold the machinery sold to Cody & Proctor, and that Carver could not prevent the complainant from removing the machinery to enforce the lien against Cody & Proctor.

The court below found that the bill of sale given by Cody & Proctor passed the title to the machinery back to the complainant; that the complainant had a lien on the property against the title of Cody & Proctor for the purchase price, and that this lien was filed with the register of deeds within the time prescribed by the statute; that the property was attached to the mill of Carver; and that, when the lease became forfeited while the property was so attached, the complainant lost all right of lien thereon, as, by the forfeiture of the lease, the title passed to Carver. The court further found that Hurst & Sullivan had authority to take the bill of sale; that

the lease was terminated by the action of Carver and the consent thereto of Cody; and that Carver became repossessed of the premises, and the mill and machinery contained therein, including the machinery in question. The court stated, further:

" Were it material to this issue, I should hold that the surrender made by Cody could not in any way affect the complainant's lien upon this property. As a result of these facts, the ruling of the court is that the bill of sale and proceedings in relation thereto resulted in a surrender and cancellation of complainant's lien upon Cody & Proctor's interest in the property, and that therefore the decree should be in favor of the defendants."

The decree was rendered in favor of the defendants, from which the complainant appeals.

The defendants' contentions in this court are:

1. That the complainant has no lien against any of the property for the reasons—

(1) That the statute under which the proceedings were brought does not give a lien, in respect to engines and machinery sold, unless the vendor constructs, repairs, or puts up the engine, machinery, or appurtenances upon the land which is sought to be charged with the lien.

(2) That the complainant failed to file its notice of. lien with the register of deeds in the county of Chippewa within the time required by the statute.

2. That, even though the complainant may have, at the outset, brought itself within the provisions of the lien law, yet it withdrew itself therefrom when, through its attorneys of record, it settled its claim against Cody & Proctor, discontinued its suit on the draft taken at the time of the sale of the machinery, and received a return bill of sale of all of Cody & Proctor's interest in the machinery; that, in consequence of such action on complainant's part, there was no longer a subsisting indebtedness upon which a lien suit could be predicated.

3. That in no event, under the circumstances of this case, can a lien attach upon the premises of defendant Carver, or upon the added building and machinery, which became his, when attached, conformably to the terms of the lease.

It will be seen that the result of the decree below is that complainant has lost the entire machinery sold to Cody & Proctor, and that, by the forfeiture of the lease, Mr. Carver has acquired title thereto. This result is so inequitable that the decree should not stand unless the complainant has in some way estopped itself from claiming any rights therein, or Mr. Carver, under the technical rules of law, has by this forfeiture acquired title which cannot now be disturbed.

It appears conclusively, from the testimony, that the acceptance for the machinery was not taken as payment, but simply as evidence of the amount to be paid for it; and, from the conduct of the complainant and of Cody & Proctor in relation thereto, it is evident that neither party regarded the acceptance in any other light. It is elementary that neither a note nor an accepted draft would be payment unless it was intended by the parties to be so. *Hotchin* v. *Secor*, 8 Mich. 494; *Brown* v. *Dunckel*, 46 Mich. 32.

The mill and machinery were purchased to put upon the property in question, and there to be used and operated by Cody & Proctor, the lessees. It was so placed and used. The complainant, in order to save its rights, and within the time prescribed by Act No. 179, Pub. Acts 1891, as amended by Act No. 199, Pub. Acts 1893, filed a lien in the office of the register of deeds of that county. This lien covered the property in controversy, and, as against the machinery so purchased, must be held to be a valid and subsisting lien, unless the complainant, by the act of Hurst & Sullivan in taking the bill of sale, released its right to insist upon the same. The authority given to Hurst & Sullivan was to take the bill of sale if the right to remove the property was secured to the complainant. The bill of sale was taken, when it appears that defendant Carver declared the lease forfeited, and, under the terms of the forfeiture clause, claimed that the title to the mill and machinery had passed to him. Under these circumstances, the complainant was not bound

to stand by the bill of sale. It at once directed its attorneys to make no claim under it and to enforce the lien. This it had the right to do. It could not be bound by the bill of sale, and be held to have surrendered its rights under its lien claim. It apparently was acting in the utmost good faith, and willing to get out of the difficulty by receiving the machinery back. It was not permitted to do this, but was met with the claim of Carver that, under the forfeiture of the lease, the title to the mill and machinery had passed to him. We think this claim cannot be sustained. The lease was in force at the time the mill machinery was erected, and when the claim of lien was filed in the office of the register of deeds. This was notice to Mr. Carver of the claim which complainant made. He must be held as having notice of this at the time of the forfeiture of the lease. While, as between Cody & Proctor and Carver, the forfeiture may have conveyed the title of the mill and machinery to Carver, yet this would not deprive complainant of its rights under its lien.

The statute provides for such liens, and their enforcement by sale of the property. Act No. 199, Pub. Acts 1893, provides that—

"Every person who shall, in pursuance of any contract, express or implied, written or unwritten, existing between himself as contractor, and the owner, part owner, or lessee of any interest in real estate, build, alter, improve, repair, erect, ornament, or put in, or who shall furnish any labor or materials in or for building, altering, improving, repairing, erecting, ornamenting, or putting in, any house, building, machinery, wharf, or structure, * * * shall have a lien therefor upon such house, building, machinery, wharf, and other structure and its appurtenances, and also upon the entire interest of such owner, part owner, or lessee in and to the lot or piece of land," etc.

By paragraph 4 of section 9 of the act, it is also provided that—

"The liens for such labor or materials furnished, including those for additions, repairs, and betterments, shall attach to the building, machinery, erection, structure, or improvement for which they are furnished or done, in preference to any prior title, claim, lien, incumbrance, or mortgage to or upon the land upon which such building, machinery, erection, structure, or improvement belongs or is put."

This section also provides that, if the machinery, etc., were furnished in the construction or erection of an independent building or other improvement, commenced since the attaching of any prior title, claim, etc., the court may, in its discretion, order such erection or improvement to be sold separately, and the purchaser may remove the same within such reasonable time as the court may fix.

Mr. Carver, as lessor of the premises, had the right, under the forfeiture of his lease, to re-enter the premises; but this did not give him any interest or title to the machinery furnished by the complainant superior to the complainant's lien. That lien held good as against the property furnished by it to Cody & Proctor, notwithstanding the forfeiture of the lease; and the complainant, under its bill to enforce the lien, had a right to a decree against all the defendants, and, under the statute, a right to have this property sold separately from the land which Carver owns.

The decree of the court below will be reversed, and a decree entered here in accordance with these views, and the proceedings transferred to the court below to carry out its provisions. Complainant will recover costs of both courts.

The other Justices concurred.