**C. T. SCHNEIDER et al., Appellants,**

**v.**

**DELWOOD CENTER, INC., Appellee.**

**Nos. 11325, 11344.**

Court of Civil Appeals of Texas.

Austin.

July 7, 1965.

Rehearing Denied Oct. 6, 1965.

Second Rehearing Denied Oct. 27, 1965.

Smartt, Fallon & Cook, Jack F. Cook, Jr., L. Hamilton Lowe, Austin, for appellants.

Rogan B. Giles, Meyers & Shannon, James R. Meyers, Austin, for appellee.

HUGHES, Justice.

These two causes have been consolidated for briefing and other appellate purposes. It is conceded by the parties that both appeals present the same questions as to the merits of the controversy and that a final judgment has been rendered. We will, therefore, not discuss the two appeals separately nor the tortuous procedural trail which culminated in a final judgment.

Delwood Center, Inc., hereinafter called Delwood, was plaintiff below and is appellee here. It sued, among others, appellants C. T. Schneider, Wilson Foreman and Bill Buck for a declaratory judgment declaring that liens asserted by appellants and others on a certain described 3.85-acre tract of land in Austin, Texas, and its improvements were invalid and without force or effect insofar as the fee title to such property, held by appellee, is concerned and that appellee be declared to have the right to mortgage, sell, lease or convey said property and improvements free and clear of and without regard to any and all liens asserted or claimed by defendants.

Summary judgment and a final judgment based on such summary judgment was rendered granting appellee, in substance, the relief for which it sued.

It is our opinion that the summary judgment and final judgment rendered by the trial court should be and they are affirmed.

The basic facts of this case are not complicated. Delwood owned a long term lease on about 22 acres of land between Town Lake and Riverside in the City of Austin. Delwood entered into negotiations with Herman F. Hall who desired to build improvements on 3.85 acres of the 22-acre tract. These negotiations resulted in a lease agreement between Delwood and Hall by the terms of which Hall could construct improvements on the designated 3.85-acre tract at his sole cost and expense. No improvements were required by this lease agreement and Delwood had no control over the construction of improvements, if made. This lease agreement was duly recorded in Travis County prior to the creation of any liens asserted by appellants.

We quote the following provisions of the Delwood-Hall lease:

"Lessee agrees that at the termination of this lease, however such termination may be brought about, to quit and surrender the premises and all improvements thereon to Lessor in good condition, reasonable wear and tear and acts of God or public enemy or unavoidable accident excepted. * * * Any and all improvements on the lease premises at the termination of the lease shall be and become the property of

Lessor, and Lessee shall have no further interest or claim in the improvements thereafter.

\* \* \* \* \* \*

16. A. It is understood and agreed by and between the parties hereto that in order for Lessee to be able to obtain interim and permanent financing for the construction and permanent financing of the improvements to be constructed upon the lease premises, it will be necessary for the lending institution or institutions which are providing such financing to have a first and superior lien on the particular property upon which the particular improvements are to be constructed. Lessor hereby agrees with Lessee, that it will subordinate and make junior and inferior any and all of its liens and rights in the premises granted by law or by this lease contract or its leases with Martha Ola Tulloch in favor of the lending institution or institutions which may provide the interim or permanent financing for the improvements to be constructed upon the lease premises in order to enable such institution or institutions to have a first and superior lien on the fee interest in said land.

\* \* \* it is agreed as a further condition of this lease that the filing of any petition in bankruptcy, receivership or insolvency by or against the Lessee shall be deemed to constitute a breach of this lease and thereupon, ipso facto and without entry or other action by the Lessor, this lease shall become and be terminated."

With this lease of record, Hall commenced the construction of an apartment complex on the 3.85-acre leased tract, and he entered into numerous contracts required for completion of the project. Appellants contracted with Hall and furnished labor and materials going into the apartment construction. They did not deal with Delwood in regard to such contracts and they looked alone to Hall for their compensation.

During construction of the apartments, Delwood acquired fee title to the 3.85-acre tract leased to Hall.

Hall completed construction of the apartment project, but encountering financial difficulties, he defaulted on his contracts with appellants, who, by compliance with Art. 5452, V.T.C.S., fixed such liens on the 3.85-acre tract and its improvements as the law authorizes.

On July 7, 1964, an involuntary petition in bankruptcy was filed against Hall, and on August 24, 1964, he was adjudicated bankrupt. This event, according to its terms, brought an end to the Delwood-Hall lease, and Delwood has declared its termination.

The owner of the fee title to the 3.85-acre tract subordinated its interest to Franklin Life Insurance Company who holds a $700,000.00 lien against the property. Delwood, in order to protect its fee title to the 3.85-acre tract, has undertaken to pay this encumbrance in accordance with its terms and has assumed control of the apartment project.

The general principles of law applicable to this factual situation are indisputable.

The rights of a contractor or materialman can rise no higher than those of the person with whom he has contracted or to whom he has furnished labor and materials. Accordingly, contracts with or material and labor furnished to a lessee of realty cannot, per se, give any rights against the lessor or his title to the realty. Grube v. Nick's No. 2, Tex.Civ.App., 278 S.W.2d 252, El Paso, writ ref., n. r. e.

In Wotola Royalty Corp. v. Bethlehem Supply Corp., Tex.Civ.App., 152 S.W.2d 480, Amarillo, affirmed 140 Tex. 9, 165 S.W.2d 443, the Court, Justice Folley writ-

ing, quoted approvingly from Jones on Liens, Vol. 2, p. 260, as follows:

" 'A mechanics's lien attaches to a lessee's leasehold estate subject to all the conditions of the lease. Though the lessee has made valuable improvements, which are to become the property of the lessor at the end of the term, or which are to revert to him upon his failure to perform the covenants of the lease, upon the lessee's default the property reverts to the lessor free from the lien of mechanics, unless these are in some way protected by statute.' "

This rule, judging from the authorities cited to support it, seems to be generally accepted.

Elsewhere in this opinion Justice Folley used this language:

"The interest held by the lessee and the assignee was subject to the performance of the drilling obligation, and of this fact the appellees had constructive knowledge at the time their purported liens were created. Under such conditions the lessee and the assignee could encumber the real property only to the extent of the interest held in it by each respectively which interest expired by the non-performance of the contract; and with it we think also expired the liens of the appellees in so far as the real property is concerned. This limitation upon the authority of a lessee of real property to encumber the property of the owner with mechanic and materialman's liens under the provisions of article 5452, R.C.S. of 1925, has been well settled by the authorities of this State. In this connection, however, we are not unmindful of the fact that article 5452 provides for a lien only upon contracts with the owner of real property, his agent, trustee, receiver or contractor, and therefore excludes the authority of a lessee."

We must now examine the points upon which appellants rely to avoid the effect of the law as it relates to the basic facts of this case.

The first three points, jointly briefed, are general in nature and are to the effect that issues of fact were present in the record sufficient to cause the rendition of summary judgments to be erroneous as to each appellant.

Delwood pleaded that it "did not participate in any way in the construction of such apartments and did not deal with or contract with any of the lien claimants in any way express or implied." Appellants denied this allegation and say that it is the "implied" participation by Delwood which "creates serious difference between the parties."

Appellants quoted, in their answers, paragraph 16.A of the Delwood-Hall lease, copied above, and alleged that such paragraph was made in their behalf as third party beneficiaries.

Appellants also alleged in their answers the following:

"Plaintiff, by entering into a written Escrow Agreement with Herman F. Hall and Dallas Title and Guaranty Company, dated April 29, 1964, recognized and acknowledged this defendant's mechanics' and materialman's lien against said land and improvements.

Plaintiff and Herman F. Hall, at a time when said lease contract was in full force and effect, entered into a written agreement, dated May 21, 1964, by which they agreed to use the revenues received from South Shore Apartments for the payment of mortgages and said agreement by its terms was to remain effective until all liens were satisfied. Said agreement was made at a time when Herman F. Hall and plaintiff had actual knowledge of this defendant's lien. This defendant says that such agreement constituted a contract for the benefit of third par-

ties, to-wit, this defendant as one of the lienholders.

\* \* \* \* \* \*

This defendant says in the alternative that by reason of the above and foregoing the plaintiff is estopped by its said contracts and agreements from denying the validity of this defendant's first and superior lien against the fee interest in said land. \* \* \* "

Appellants contend that these allegations are sufficient to create an issue of fact as to whether the relationship of principal and agent existed between Delwood and Hall. We quote from their brief:

"Here, the Lessee was clearly authorized to incur the obligations which are the basis for the liens. The only dispute is as to whether or not he was authorized to incur the obligations in such manner as to render the land subject thereto. If he had such authority, actual or implied, the liens are good as to all the property, not just the improvements. Unless and until all the facts and circumstances surrounding the various transactions and negotiations between Herman Hall and the representatives of the Plaintiff, which resulted in the supplemental and independent written agreements above referred to, are developed, it cannot be said that the record shows conclusively that the Plaintiff was not bound by the contracts of Hall or that the land is free from the constitutional and statutory liens asserted."

■ We will discuss first the contention of appellants that they are third party beneficiaries under paragraph 16.A of the Delwood-Hall lease. In our opinion, this contention is untenable. Delwood subordinated all of its rights in the premises to "lending institutions" who it was contemplated by the parties would furnish interim financing for the apartment project, the contract reciting that in order to procure such financing it would be "necessary for the

lending institution \* \* \* providing such financing to have a first and superior lien" on the property.

Appellants are either mechanics or materialman. They profess to be nothing more. There is no evidence that any of them is a "lending institution." A "lending institution" has been judicially defined in Asplund v. Marjohn Corp., 66 N.J.Super. 255, 168 A.2d 844, as an "established public or private financing body, incorporated or otherwise recognized under appropriate law."

The vocations of appellants bear no resemblance to the business of lending money.

Furthermore, appellants have not practically construed this Contract as applying to them. They procured no lien, superior or inferior from anyone. They relied completely, insofar as their actions are concerned, upon the responsibility of Hall and their statutory or constitutional liens, all of which are independent of the Delwood-Hall lease.

We overrule appellants' points to the effect that they are "lending institutions" or that they are third party beneficiaries under the Delwood-Hall lease.

■ It is also our opinion that reliance upon the April 29, 1964, escrow agreement between Hall, Delwood, the Dallas Title and Guaranty Company and the City National Bank of Tarrant County does not give appellants Schneider and Foreman any rights under the theory that it was made for their benefit. The escrow agreement by which Hall was required to deposit over $27,000.00 in the Bank was made to protect Delwood and the Dallas Title and Guaranty Company against specific liens. The liens of Schneider and Foreman had not then accrued and, in any event were not included in the agreement.

The escrow agreement recited that Hall disputed the validity of the lien of Buck and that he desired to litigate it. The agreement also provided that none of the escrow

money should be paid out without the signature of Hall except in payment of a final judgment establishing the validity of such lien. Hall in this agreement also represented that there were no other unpaid labor or material bills by reason of the improvement of the property in suit. Mr. Hall had executed a check for $55,600.00 in favor of the Title Company which was returned unpaid.

We have not gathered from the record just what became of the money placed in escrow, if it was placed in escrow. Appellants make this statement in their brief. "By what right did Plaintiff take over the bank account pledged to discharge these liens?" If this statement refers to this account and if there is a sufficient showing that Delwood did receive this escrow money then we will reconsider our disposition of this point as to Buck. In the meantime, we overrule it.

The May 21, 1964, agreement between Delwood and Hall recites that Hall has established a bank account in Austin for the operation of the apartments in suit and that it was subject to their joint checks and was to be disbursed only for payment of mortgages, utilities, upkeep and, "any other item agreed upon between the parties hereto, for and during the term of six (6) months from this day, or until the present liens against said apartment house have been satisfied completely. Upon satisfaction of all liens, this Agreement shall terminate."

■ We hold that appellants are not shown to have any present right under this Agreement which was made to protect Delwood's fee title to the 3.85 acres from foreclosure. They do not hold any mortgages against this property. Delwood has not agreed to pay them their liens. The conditions of the agreement are not met by appellants.

Appellants do not point to any evidence, direct or circumstantial, tending to prove that in the premises Delwood was the principal and Hall was its agent, nor was this relationship pleaded.

We overrule appellants' first three points.

Appellants' fourth, fifth and sixth points are jointly briefed and will be so considered. They are that the three appellants have been erroneously denied the right to a factual determination as to whether all or any portion of the improvements placed on the land in suit may be removed without injury to such land.

There are affidavits of appellants in the record to the effect that some of the improvements placed on the land by them are capable of being removed without substantial damage to the land or improvements.

Among the authorities cited in support of these points is Freed v. Bozman, Tex. Civ.App., 304 S.W.2d 235, Texarkana, writ ref., n. r. e. This case holds that where improvements are placed on land under a contract with the owner of the land that a prior holder of a vendor's lien on the land cannot prevent the removal of such improvements when such removal can be accomplished without injury to the freehold. There are many authorities to the same effect.

The problem here is that when the lease terminated the improvements thereon reverted to the owner of the fee under express provisions of the lease. The applicable law under these circumstances seems well settled.

Art. 5452, V.T.C.S., provides, in part:

"Any person or firm, lumber dealer or corporation, artisan, laborer, mechanic or subcontractor who may labor, specially fabricate material, or furnish labor or material: (a) for the construction or repair of any house, building or improvement whatever; (b) for the construction or repair of levees or embankments to be erected for the reclamation of overflow lands along any river or creek; (c) or for the construction or repair of any railroad: within this state under or by virtue of a contract with the owner,

owners, or his or their agent, trustee, receiver, contractor, contractors, or with any subcontractor; upon complying with the provisions of this Chapter shall have a lien on such house, building, fixtures, improvements, * * *."

Appellants had no contract with the owner of the 3.85-acre tract, nor with his agents or representatives. In Kelly v. Heimer, Tex.Civ.App., 312 S.W.2d 430, San Antonio, writ ref., n. r. e., the Court made this statement:

"Where the contract for materials, labor and construction is not made with the owner or his duly authorized agent, the owner of the land may not be held liable personally, nor may a lien be fixed on his land."

In Campbell v. Teeple, Tex.Civ.App., 273 S.W. 304, San Antonio, n. w. h., the Court, in discussing the lien of a materialman, stated:

"No lien can attach to the estate or reversion of the landlord, and, where goods have been put into, or fixtures are wrought into, a building so as to become a part of the realty, the materialman's liens can only attach to such estate of the tenant as he possesses and subject to all the terms and conditions of the lease and to all the rights of the landlord or owner, so that when the lease has been terminated and forfeited, the tenant has no estate left to which such a lien may attach. There is nothing upon which a materialman can foreclose.

No statute in this state provides for fixing any lien upon the landlord's reversion or estate for goods furnished to a tenant."

This case also quoted, with approval, from an opinion by Justice Fly in Penfield v. Harris, 7 Tex.Civ.App. 659, 27 S.W. 762, San Antonio, writ ref., and we copy a portion of such quotation:

" 'The lien contemplated in the above statute can be fixed on improvements, machinery, or fixtures placed on land by no one except by authority of the owner of the land, his agent, trustee, contractor, or contractors. * * * Plaintiffs in error [materialman] had no kind of lien on the property, whether it became a part of the improvements of the freehold or not. If the property became improvements on the land, then the lien for material furnished could not attach, because Alvord did not own the land; and, if the property did not become improvements on the land, then the lien could not attach, because the lien for material cannot attach independent of connection with the land.' "

Under these authorities, and many more which could be cited, we hold that appellants have no lien on any of the improvements on Delwood's land and, hence, no right to remove them.

We do not consider valid the effort of appellants to distinguish some of the authorities cited herein on the ground that the lease herein involved did not contain a provision that the improvements, on termination of the lease, should revert to lessor free of encumbrances. None of the cases cited by us or the parties has turned on this point. Neither in Penfield v. Harris, Campbell v. Teeple nor in Grube v. Nick's No. 2, supra, nor in other cancelled lease cases which we could cite was this provision in the lease. We hold that the inclusion of such provision is not a requisite to the rule stated and applied herein.

Appellants also contend that Delwood in making the lease recognized that Hall might effectively encumber the improvements to be placed on the premises. They draw this conclusion from a paragraph in the lease to the effect Delwood was given a lien on all improvements and fixtures attached to the buildings to secure payment of the rent. In this respect appellants say, "Were it true that no liens could attach to

the improvements superior to the Lessor's rights on termination of the lease for any cause, this provision for a Lessor's lien would have been unnecessary." Perhaps this provision of the lease was gilding the lily somewhat but we fail to see the logic in appellants' argument that Delwood by giving itself a multiple choice of remedies for breach of the lease has not only lost one of them but also has given to appellants a remedy against itself. The points under consideration are overruled.

Point seven is that the court erred in not holding that appellants are entitled to relief by way of specific performance of the Contract made for their benefit as embodied in paragraph 16.A of the Delwood-Hall lease. Since we have held that no such Contract was made, we overrule this point for the reasons stated in discussing that question.

The eighth and last point is that the court erred in holding that appellants are not entitled to recover under the theory of quantum meruit for benefits conferred and to prevent unjust enrichment.

There is a sufficient showing that appellants have contributed to the value of Delwood's land for which contributions they have not been paid.

In Cantrell v. Garrett, Tex.Civ.App., 342 S.W.2d 466, Houston, n. w. h., the Court quoted the classic statement of Chief Justice Fly of the San Antonio Court in Barrow v. Booth, Tex.Civ.App., 227 S.W. 1113, n. w. h., setting forth the essentials of a plea of quantum meruit as follows:

" 'The law as to quantum meruit rests on the principle that a person will be compelled to pay for services if he stands by and permits another to render such services, under such circumstances as to convince any reasonable man that they were being done with the expectation of being paid for them, and no effort is made to prevent the rendition of such services. *This proposition of law is based upon the knowl-*

*edge of the person served that the services were being rendered for him, and not some other person* (emphasis supplied), and liability will depend upon the facts of each case.' "

■ There is no showing in this record that appellants furnished any materials or labor to Delwood. They dealt with Hall and only with Hall. There is no basis for a recovery on quantum meruit. Point eight is overruled.

Having disposed of all points presented by appellants and finding no error, the judgment of the trial court is affirmed.

Affirmed.

On motion for rehearing

We expressed doubt in our opinion as to which bank account reference was made by appellants' inquiry, "By what right did Plaintiff take over the bank account pledged to discharge these liens?" This doubt is removed, appellants stating that it refers to the May 21, 1964, contract between Delwood and Hall. Since there is no showing that the $27,000.00 escrow deposit was made or, if made, that Delwood received any portion of it, under the April 29, 1964, agreement, we make unconditional our previous conditional ruling on this point.

Appellants make a very appealing argument based on Summerville v. King, 98 Tex. 332, 83 S.W. 680, in support of their contention that their liens should be superior to the rights of appellee insofar as improvements which may be removed without injury to the land or permanent improvements are concerned. This argument appeals because it, if applied, prevents unjust enrichment of a lessor under circumstances present here.

In Summerville the Court discussed present Art. 5459 which gives preference to certain liens for improvements over prior liens, encumbrances and mortgages against the land on which the improvements are placed. It is solely because of this statute that this

result is achieved. Hammann v. H. J. Mc-Mullen & Co., 122 Tex. 476, 62 S.W.2d 59.

■ There is no similar statute subordinating the rights of lessors to those who contract with lessees. We do not consider Summerville as overruling or being inconsistent with Penfield v. Harris, cited in our opinion.

The motion is overruled.

Motion overruled.