**A. Abner ROSEN et al., Appellants,**

**v.**

**William H. PECK, d/b/a Mechanical Services, Appellee.**

**No. 4809.**

Court of Civil Appeals of Texas.

Waco.

July 10, 1969.

---

Mullinax, Wells, Mauzy, Levy & Richards (Albert Levy), Dallas, for appellants.

McGown, McClanahan & Hamner (Philip Hamner), San Antonio, for appellee.

## OPINION

HALL, Justice.

Appellants are residents of New York and are real estate investors. They own two bowling alleys in the City of San Antonio. One alley is on Bandera Road and the other is on Roosevelt Street. Appellee, Peck, is in the air-conditioning business. During the months of April, May and June, 1963, he contracted for and completed improvements to the air-conditioning systems of both bowling alleys. His work was not

simply repairs; it constituted reconstruction and permanent improvements to the cooling systems. At all times, he dealt solely with authorized representatives of Bol-Con, Inc. He did not know of appellants, and did not know they were owners of the alleys.

In a non-jury trial, Peck recovered judgment for the reasonable value of his work, for attorneys' fees, and for foreclosure of a mechanic's lien on the bowling alley properties.

Appellants' position is that at all material times Bol-Con was their lessee, and without authority to render them or their property liable under the contract with Peck. They point to a line of cases, most of which are cited and followed in Schneider v. Delwood Center, Inc., (Tex.Civ.App., 1965, writ ref., n. r. e.) 394 S.W.2d 671, which holds that, ordinarily, no rights accrue in favor of a mechanic or materialman against an owner of leased premises or his title to the premises as a result of contracts with his lessee.

Peck pleaded, and the trial court expressly found, that in its dealings with Peck, Bol-Con was acting as agent for appellants, as its undisclosed principals, within the course and scope of its actual authority. Appellants contend there is no probative evidence to support this finding. We overrule appellants' contention.

Appellants became owners of the bowling alleys on May 7, 1962, through conveyance from Bol-Con. At the time of the purchase, appellants had knowledge of the following facts: Bol-Con, a Texas corporation, was chartered in 1960 with a capitalization of $1,000, for the purpose, among others, of building and operating bowling alleys. In 1961, it owned the bowling alleys in question. In January or June of that year, it leased the alleys, separately, for 25 years, to two subsidiary companies of Allstate Properties, Inc. Allstate is a resident of New York. As an inducement to the leases, Allstate guaranteed their performance to the extent of a liability of $1,000,000. In November, 1961, apparently in connection with

permanent loans on the lands and improvements of the bowling alley tracts, Bol-Con executed a note secured by deed of trust on each tract; each note was in the amount of $150,000, and was payable to an insurance company. Two officers of Bol-Con also signed the notes and deeds of trust, in their individual capacities, as guarantors.

The conveyances of the alleys from Bol-Con to appellants were by general warranty deeds. The deeds recited a consideration of $10.00. The conveyances were subject to the $150,000 indebtedness on each tract, but appellants did not assume either indebtedness. Neither deed was subject to the existing leases from Bol-Con to the subsidiaries of Allstate. Contemporaneous with the execution of the deeds, appellants, as lessor, and Bol-Con, as lessee, executed comprehensive lease agreements whereby Bol-Con leased each bowling alley for a term of 25 years with an option for renewal. The lease agreements were prepared by appellants' attorney. With exception of property descriptions, the leases are identical and will be referred to in this opinion in the singular.

The lease grants and imposes limited rights and broad duties to Bol-Con, and broad rights and limited duties to appellants. The lease is a "net lease" and effectively requires of Bol-Con that appellants are to receive an annual rental of $26,500, payable in equal monthly installments, with absolutely no expense or liabilities to appellants during the term. Bol-Con is permitted to use and occupy the premises for the operation of bowling alleys and services normally found in a bowling alley, and no other purpose. Bol-Con was required to take the premises in "as is" condition, and appellants did not warrant or represent the fitness or use of the premises for any purpose. With the exception of principal and interest of mortgages on the properties, Bol-Con is required to pay at its expense, "all taxes, insurance premiums, assessments, and all other costs, carrying charges, expenses and obligations of every kind and nature whatsoever relating to the

demised premises to the same extent as if the lessee were the owner" of the property. As "additional rent," Bol-Con is required to keep paid in advance one month's rent for the use of appellants in the event of rental default by Bol-Con, and to keep deposited in advance in escrow for the benefit of appellants an amount to meet any required payment of taxes or any assessment or levy by public agency on the realty or personalty. Bol-Con is required at its expense to furnish insurance guaranteeing payment of its rent, providing fire and extended coverage on the premises, and protecting appellants from damage or injury to any person or property on the premises from whatever cause. Bol-Con also agreed "to indemnify, protect and save harmless the lessor, its successors and assigns, against any and all" claims of damage or injury to any person or property on the premises from whatever cause. In short, under the express terms of the lease, Bol-Con assumed at its cost, with the exception of payment of mortgages on the property, every expense and liability "imposed as a consequence of the ownership of the leased premises."

Bol-Con agreed to subordinate its interest in the lease to any existing mortgage liens on the premises and to any that may "hereafter affect the demised premises and to all renewals, modifications, consolidations, increases, replacements or extensions" of any mortgages. This subordination clause was agreed to be self-operative without the necessity of execution of any instruments of subordination in the future. However, it also provided that Bol-Con appointed appellants its attorneys-in-fact to execute any such instrument that might be required by a mortgagee.

Bol-Con had no right to assign the lease without the written consent of appellants. However, appellants could sell their interests under the lease or the premises at anytime, "and thereafter be entirely freed and relieved of all covenants and obligations hereunder and shall not be subject to any liability resulting from any act or omission or event occurring after such conveyance." It was agreed that so long as appellants, or any future owner of the premises, shall be a partnership, individual, joint venture or tenancy in common, "then there shall be no personal liability on such (owners) in respect to any of the covenants or conditions of this lease;" and, except for the withdrawal of deposits made for real estate taxes that are not yet due, "the lessee shall look solely to the equity of the owner of the property for the satisfaction of the remedy of the lessee in the event of a breach by the lessor of any of the terms."

The only asset of Bol-Con, under the lease, was the rental from the Allstate-owned sub-lessees. Bol-Con, as a condition in the lease, assigned all sub-leases to appellants as security for payment of Bol-Con's rent and additional rents, "Provided that no rights to collect rent or other interest in the rents shall accrue to lessor until a default by lessee." Bol-Con also expressly agreed in the lease that it would not cancel, surrender or modify, or consent to such action, of the sub-leases with Allstate's subsidiaries, "nor do any matter that would in any way affect, alter or diminish" the guaranty agreement executed by Allstate; that copies of any communication between Bol-Con and Allstate or its subsidiaries regarding the sub-leases or the guaranty agreement would be immediately sent to appellants; and that "no agreement shall be binding on lessor with respect" to the sub-leases and the guaranty by Allstate "unless in writing signed by lessor."

The lease provided that Bol-Con would deliver to appellants every six months a statement showing all rents collected and percentage rents collected from all sub-tenants; and deliver an annual statement, prepared by a certified public accountant, showing this same information. Also, if required by a mortgagee or proposed mortgagee, Bol-Con agreed to deliver a statement as to the expenses of operating the property together with a list of sub-tenants, setting forth names, space occupied, term

of sub-lease, rent paid, security if any, and other information.

Appellants were expressly relieved, under the terms of the lease, of any liability or obligation to make any improvements or repairs of any kind; Bol-Con was expressly obligated, at its own cost and expense, to "properly and promptly maintain in a good and workmanlike manner * * * the entirety of the demised premises, including but not limited to, the foundation, structural walls, supports and roof of all the building and improvements, * * * cooling, heating and other machinery and equipment, * * * the parking areas, roadways within the land covered hereby, * * * paving and all other installations located within and without the building on the leased premises." Upon termination of the lease, Bol-Con is required to surrender the leased premises "in as good condition as when received, reasonable wear and tear excepted."

Appellants were granted the right to enter and repossess the leased premises in the event, among other occurrences, of the failure of Bol-Con to pay any rent when due within 10 days after written notice. However, the failure of appellants to reenter or repossess in the event of default by Bol-Con did not in anywise constitute a waiver of any rights of appellant under the lease; and so long as not in default, appellants warranted that Bol-Con would "lawfully, peaceably and quietly hold, occupy and enjoy the premises during the term, without hindrance, ejection or molestation."

Identical lease agreements were executed between appellants and Bol-Con on bowling alley properties owned by appellants and located in the cities of Waco and Garland; and a default on one constituted a default on all.

Appellants did not receive nor require any financial statement from Bol-Con before executing any of the lease agreements, though they had no prior dealings with Bol-Con or any of its three officers and directors.

Bol-Con was always late on its rental payments. Often, Bol-Con's checks were not honored on presentation, and appellants would require payments by cashier's check or certified check. The sub-tenants defaulted in payment of their rent to Bol-Con and appellants wrote numerous letters to the sub-tenants demanding payment of rent. Finally, after Bol-Con had defaulted in payment of rent, appellants assumed the partnership name of "Bol-Con Associates" and began dealing directly with the sub-tenants. They collected the rent for the months of February and March, 1963, from the sub-tenants. They wrote Bol-Con a letter on March 15, 1963, reminding it of its rental responsibilities under the four leases, and notifying it of their collection of the rent from the sub-tenants for February and March. The letter enclosed the balance due Bol-Con from the February rent collected by appellants, after deduction of appellants' "net" and escrow for taxes. The letter stated " * * * Our collection" (of rent from the four sub-tenants) "has been under the assignment of the sub-leases made at the time of closing last May. This is to effect an orderly payment of rent without in anyway affecting your liability under the leases or the personal guaranties thereof. As the real property taxes assessed against each parcel may vary from year to year, the amount that we remit to you will vary. In making this collection from the four sub-tenants, we do not assume any of your liability towards the sub-tenants and this is a matter of convenience only for both of us. In all other respects the leases are to remain in full force and effect." The letter provided a place at its foot for Bol-Con to assent by signature. It also instructed Bol-Con to sign and send the following letter to all four sub-tenants, and to return signed copies of the letter to appellants:

"This letter will confirm your payment of rent to Bol-Con Associates, a partnership consisting of Abraham Kamber and A. Abner Rosen, * * *. This letter is your authority to continue paying rent to Bol-Con Associates until further notice

is given you signed by the undersigned and by Messrs. Rosen and Kamber. In no event is this direction to you to pay the rent to Bol-Con Associates to be deemed an assumption of any liability by Messrs. Rosen and Kamber under the lease between Bol-Con, Inc., and you.

"Yours very truly,
"Bol-Con, Inc.
"By————————."

In September, 1964, appellants, as plaintiffs, filed a forcible detainer action in a justice court in Bexar County against the sub-tenant of the bowling alley on Bandera Road. In their complaint appellants pleaded the lease made in 1961 between Bol-Con and the sub-tenant. They then alleged, under oath, that "thereafter, on the 1st day of May, 1962, Bol-Con, Inc., for value received, assigned unto plaintiff herein, A. Abner Rosen and Abraham Kamber, all of its right in and to said lease * * * Pursuant to the aforesaid lease contract, the defendant entered such premises and became the tenant of the plaintiffs. On the fourth day of September, 1964, the plaintiffs, being the persons entitled to the possession of said premises, made demand in writing of the defendant for possession * * *."

Appellants also instituted suit against Allstate Properties, Inc., based upon the guaranty agreement between Allstate and Bol-Con, for collection of rent due from the sub-tenants.

Because of the failure of Bol-Con to pay its state franchise tax and penalties, its right to do business in Texas was forfeited on July 16, 1963, by order of the State Comptroller. By default judgment of the district court, its corporate charter was forfeited on December 17, 1964.

Fairly and reasonably considered most favorably toward the trial court's finding of agency, the record shows that at the time Bol-Con contracted with Peck, appellants had placed Bol-Con in apparent control of valuable revenue producing properties, worth at least $300,000, owned by them; that appellants knew that Bol-Con was financially irresponsible; that the only income produced by the properties was the rent from the original tenants of Bol-Con; that appellants completely controlled the collection and disbursement of that income; that appellants assumed complete control of the lease contracts between Bol-Con and its sub-tenants and of all transactions related to them; that appellants effectively controlled and directed Bol-Con's activities as they related to Bol-Con's alleged rights under the lease agreement; that Bol-Con's relationship to appellants was, for all practical purposes, that of manager-caretaker of the physical properties of the bowling alleys; that Bol-Con's primary responsibility under its contract with appellants was the maintenance of the properties for bowling alley purposes; that Bol-Con was authorized and required by appellants to make all necessary repairs and improvements to the properties to keep them properly maintained; that appellants knew that debts for corrective repairs and permanent improvements to the properties would be incurred by Bol-Con and that Bol-Con would not be financially able to pay those debts; that appellants and Bol-Con did not consider their association to be a genuine relationship of lessor and independent lessee; that appellants exercised all significant control regarding the use of the properties; that Bol-Con was nothing more than a local management agent furnishing services to appellants for a compensation, under the domination of appellants, without any real, substantial control over the use of the properties.

■ Appellants did not testify and did not adduce any evidence. These failures raise a strong presumption against appellants' position and strengthen the probative force of Peck's evidence. Central Motor Co. v. Roberson, (Tex.Civ.App., 1940, no writ) 139 S.W.2d 287, 291; King Construction Company v. Flores, (Tex.Civ. App., 1962, writ ref., n. r. e.) 359 S.W.2d 919, 922. See 1 McCormick and Ray, Tex-

as Law of Evidence (2d Ed.) Secs. 100–102.

■ We hold that the finding of the trial court that in its dealings with Peck, Bol-Con was acting as agent of appellants, as its undisclosed principals, within the course and scope of its authority, is supported by probative evidence.

■ Appellants complain that the award of attorneys' fees to Peck was improper because Peck did not present his claim to them for payment as required by Article 2226, Vernon's Ann.Tex.Civ.Statutes. The record shows that Peck made a timely demand to Bol-Con for payment. Article 2226 provides that the demand may be made on an authorized agent. The trial court found that when Peck made the demand to Bol-Con, it was made to and received by Bol-Con as agent for appellants, its undisclosed principals, within the scope of its authority. There is probative evidence in the record supporting this finding.

Appellants contend that the trial court erred in holding that Peck was entitled to a lien and its foreclosure on the properties in question. As we understand appellants' argument, this contention is based upon a failure of Peck to file an affidavit claiming his lien with the county clerk as provided in Articles 5452 and 5453, Vernon's Ann.Tex.Civ.Statutes.

■ Section 37, Article 16, of the Constitution of this state, Vernon's Ann. St., provides that mechanics and materialmen shall have a lien, for the value of their labor and materials, on buildings repaired by them. This provision is self-operative and gives a lien to mechanics and materialmen upon the interest or estate that the person causing the buildings or improvement to be made thereon has in the property upon which they are situated, and it is not necessary that the mechanic or materialman comply with any statutory measures in order to effect this constitutional grant of lien to him. Strang v. Pray, 89 Tex. 525, 35 S.W. 1054, 1056

(1896). In the case before us, Peck made the improvements on the properties at the instance of appellants, the owners. He was not required to file an affidavit claiming his lien with the county clerk in order to be entitled to the relief and remedy granted him by way of foreclosure of his constitutional lien on the properties. Brick & Tile, Inc. v. Parker, 143 Tex. 383, 186 S. W.2d 66, 67 (1945).

The judgment of the trial court is affirmed.