487 A.2d 1209

**CABANA, INC., et al.**

**v.**

**EASTERN AIR CONTROL, INC.**

**No. 641, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

Feb. 13, 1985.

Certiorari Denied April 19, 1985.

610

David S. Musgrave, Baltimore (David F. Albright, Richard M. Kremen and Semmes, Bowen & Semmes, Baltimore, on brief), for appellant, Cabana, Inc.

Denis P. Casey, Salisbury, for appellant, Taurus Joint Venture.

L. Richard Phillips, Salisbury (Melvin J. Caldwell, Jr., and Hearne & Bailey, P.A., Salisbury, on brief), for appellee.

Argued before GILBERT, C.J., and WEANT and ALPERT, JJ.

GILBERT, Chief Judge.

Eastern Air Control, Inc. (Eastern) sought a mechanic's lien in the Circuit Court for Worcester County against a building owned by Cabana, Inc. (Cabana). Eastern supplied materials and labor for moving the building onto land owned by Taurus Joint Venture (Taurus), which land Taurus leased to Cabana. The circuit court (Eschenburg, J.) granted Eastern an "Interlocutory Order Establishing a

Mechanic's Lien." Later a final mechanic's lien was entered.

This controversy arose because Cabana failed to satisfy Eastern's mechanic's lien and failed to pay rent to Taurus. The latter failure resulted in a breach of the lease between Cabana and Taurus. The pivotal questions, at least to Eastern, are who owned the building on which it sought to establish its lien, and could the lien be enforced against Taurus if Taurus were the owner, notwithstanding the fact that Taurus was not a party to the agreement between Eastern and Cabana. Judge Eschenburg decided that Cabana's building was a trade fixture which was forfeited to Taurus, but that Eastern's lien remained on the building. For the reasons hereinafter set forth, we affirm the judgment of the circuit court.

At the outset, we observe that in an unusual attempt to ride a horse forward and backward at the same time, Taurus has filed briefs as both appellant and appellee. The logic of that approach eludes us.[1] Nevertheless, because Taurus was named a party defendant in Eastern's amended lien petition, we, with some reservation, grant Taurus the benefit of the doubt and consider it, in addition to Cabana, an appellant in this appeal.

The trial court ruled, "that Cabana could not remove its building from Taurus's land, that the lease between Taurus and Cabana had been terminated and that all title, right, and interest of Cabana in the building had been forfeited to Taurus." Cabana, on appeal to this Court, offers a pentad of reasons why that decision should be reversed.

First, Cabana asserts that Judge Eschenburg's ruling exceeded his jurisdiction in that Md.Rule BG73(d)(5) required the court to enter a final order either continuing or terminating the lien established by the interlocutory order. Cabana complains that instead of merely performing that act, the judge made findings that the lease had been termi-

---

1. No objection to Taurus's unusual methodology was interposed.

nated, that the building had been forfeited, and that Cabana could not remove the building from the lot. Those findings, Cabana avers, were unnecessary to the establishment of the lien.

We, however, think that the trial court acted within its jurisdiction. Md.Real Prop.Code Ann. § 9–106(d) makes it clear that after the entry of an interlocutory order, but before a final order is entered, "the action shall proceed to *trial on all matters at issue*, as in the case of any other proceeding in equity." (Emphasis supplied.) Md.Rule BG73(d)(5) reads: "The action shall proceed to trial as in the case of any other equitable action, at the conclusion of which a final order shall be entered either continuing or terminating a lien established by an interlocutory order, or establishing or denying the lien." The rule does not limit or contradict Real Prop. Art. § 9–106(d). In fact, the rule reiterates the legislative mandate that the action shall proceed to trial in the same manner as any other equitable action. Moreover, nothing in Md.Rule BG73(d)(5) requires that the trial process be so sterile that the only issues that can be decided are those that are "necessary" to the establishment of the lien. *See Tyson v. Masten Lumber*, 44 Md.App. 293, 408 A.2d 1051 (1979); Recent Legislation, *Maryland's Mechanics' Lien Law*,[2] 6 U.Balt.L.Rev. 181 (1976).

Cabana further contends that it and Taurus agreed that the building would remain Cabana's personal property. The only evidence in the record of such an agreement is the lease itself. The lease between Taurus and Cabana provided, in pertinent part:

---

**2.** "It is interesting to note that the first mechanics' lien law enacted in the United States was enacted by the General Assembly of Maryland in 1791 at the urging of Thomas Jefferson and James Madison, who championed such legislation to stimulate and encourage the rapid building of the City of Washington." *Freeform Pools v. Strawbridge*, 228 Md. 297, 302 n. 1, 179 A.2d 683, 685 n. 1 (1962).

*"Removal of Building. The Lessee shall have the right, at any time during the term hereof, to remove the building and any other improvements,* personal property or trade fixtures upon the Premises, belonging to the Lessee, installed during the term hereof; *provided, however, that Lessee is in good standing in all ways* hereunder and shall have faithfully performed each and every covenant herein during the term hereof ...."
(Emphasis supplied.)

▉ The lease tracks the common law in that, generally, the tenant's right to remove a "fixture" of any description from the demised premises must be exercised during the term of the lease. *Carlin v. Ritter,* 68 Md. 478, 483–84, 13 A. 370, 373 (1888). If the right of removal is not exercised before the term expires, the fixture becomes the property of the landlord. *Id.; Northern Central Railway Co. v. Canton,* 30 Md. 347, 355 (1869).

The lease, with respect to the non-payment of rent, provided in pertinent part:

*"Non-Payment of Rent—Breach of Lease.* If the rent or any portion thereof shall be in arrears, or unpaid, or any covenant of this Lease be breached by Lessee and shall remain breached for a period of ten (10) days after written notice of such arrearages or breaches from Lessor to Lessee given pursuant hereto, then this Lease at the option of Lessor shall become null and void upon written notice from Lessor of Lessor's intent to so treat this Lease, and Lessor may reenter upon the Premises and hold the same as if this Lease had never been made...."

▉ There is no dispute as to whether Cabana owed rent to Taurus; it did. Under the terms of the lease, Cabana defaulted through non-payment of rent, and Taurus had the right to reenter and hold the premises. Since non-payment of rent was a breach of the lease, and a breach of the lease constituted termination of the lease, Cabana could not then remove the "fixture" during the term of the lease, because

the lease was no longer in being. By not paying the rent when due, Cabana, in effect, yanked the rug out from under itself.

■ "It is presumed that parties contract with a knowledge of the existing law ... and such law becomes a part of the contract unless expressly rejected as inapplicable." *Shell Oil Co. v. Ryckman,* 43 Md.App. 1, 8, 403 A.2d 379, 383 (1979). Since the lease is silent as to whether the building is forfeited to the landlord upon default by the tenant, we apply the common law and hold, under the authority of *Carlin v. Ritter,* 68 Md. 478, 13 A. 370 (1888), and *Northern Central Railway Co. v. Canton,* 30 Md. 347 (1869), that the building was forfeited by Cabana to Taurus.

■ Next, Cabana asseverates that there was no evidence presented at trial that Cabana had quit or surrendered the premises and, therefore, Cabana did not forfeit the building. The simple answer is that such evidence was not required. Cabana breached the lease by failing to pay rent. Taurus reentered the premises and the lease was at an end. There was no need to show that Cabana had quit or surrendered the property.

■ Cabana also argues that Taurus wrongfully prevented Cabana from exercising its right to remove the building. Appellant explains that the lease was terminated on February 15, 1984, by an action of the district court, but Taurus had changed the locks on the building by January 27, 1984. Thus, Cabana reasons that it was wrongfully prevented from removing the building from Taurus's lot. What Cabana overlooks is that when it fell behind in payment of the rent, Taurus, as required, gave written notice of the breach. Nevertheless, Cabana did not pay within the prescribed 10 day grace period. It was not the district court judge's order that terminated the lease, but Cabana's breach of the provisions of the lease, coupled with Taurus's written notice to Cabana that the lease was void and that the landlord-tenant relationship was terminated. Taurus did not wrongful-

ly prevent removal, because at that point in time Cabana no longer had the right to remove the building.

We turn now to Taurus, the appellant, who raises the question: "Did the Court err in granting a mechanic's lien against landlord's building sans land to a contractor for a tenant where tenant's lease had been terminated [and] tenant's rights to the building had been forfeited to the landlord ...?" Although we have neither been directed to nor found a Maryland appellate decision on the issue, other states have decided similar questions. *See* Annot., 74 A.L. R.3d 330 (1976). In cases closely resembling the one at bar, courts have held that the lien remains on the building even though the landlord repossessed the structure. Put another way, the lien stays with the building irrespective of the tenant's departure.

In *Hayward Lumber and Investment Co. v. Graham*, 104 Ariz. 103, 449 P.2d 31 (1968), the landlord repossessed a building which the tenant had built, and at the time of repossession there was a mechanic's lien on the building. The court said that the lien remained on the building, even though tenant no longer had an interest. The Supreme Court of Arizona held that a trial court erred when the latter refused to allow a lien to be placed against a building after the lease had terminated. The high Court's rationale was employed to prevent unjust enrichment of the landlord at the expense of the mechanic.

Similarly, in *English v. Olympic Auditorium*, 217 Cal. 631, 20 P.2d 946 (1933), a lien was upheld against a building built by tenant but forfeited to landlord. The California Supreme Court reasoned that, "[t]here can be no doubt that the equities are with ... [the mechanics]. They have put into the building, in labor and material, many thousands of dollars for which they have not been paid, and the building has cost ... [the landlord] nothing whatever. To turn it over to the defendants freed from the liens of the plaintiffs would be grossly inequitable." 217 Cal. at 641, 20 P.2d at 950. For other cases on point, *see In Re Barcroft &*

*Sons Co. v. Cullen,* 217 Cal. 708, 20 P.2d 665 (1933); *Shreveport Long Leaf Lumber Co. v. Parker,* 144 So. 153 (La.1932); *Marinette Iron Works Co. v. Cody,* 108 Mich. 381, 66 N.W. 334 (1896); *Lumber & Mfg. Co. v. Obelisk Min. & Concentrating Co.,* 15 Mont. 20, 37 P. 897 (1894); *Hogan v. Gaskill,* 42 N.J.Eq. 215, 6 A. 879 (1886). *Braden Co. v. Lancaster Lumber Co.,* 170 Okla. 30, 38 P.2d 575 (1934). For cases to the contrary, *see Schneider v. Delwood,* 394 S.W.2d 671 (Tex.Civ.App.1965) and *Harris v. Bergamo,* 7 N.J.Misc. 1098, 148 A. 645 (1929). *Schnieder* is distinguishable from the case at bar in that in *Schneider* the improvements made by tenant were not considered to be trade fixtures. Instead they were held to be a part of the realty, and, consequently, they reverted to the landlord. *Harris* is distinguished from the instant case in that the mechanic's lien in *Harris* was not filed until after the tenancy expired.[3] The Nebraska Supreme Court in *Stevens v. Burnham,* 62 Neb. 672, 87 N.W. 546 (1901), held that the right of a tenant to remove a building perished when the tenancy expired. Therefore, a mechanic's lien on the building was no longer enforceable. We reject that holding and align ourselves instead with the numerous other states that have held that the lien remains on the building even though the landlord has gained the building through forfeiture. We refuse to permit the landlord to gain a windfall at the expense of the mechanic.

 Maryland recognizes that a lien can be held against a building apart from the land, because it is an *in rem* right against improved property. *Shryock v. Hensel,* 95 Md. 614, 53 A. 412 (1902); *Scott & Wimbrow, Inc. v. Wisterco Invs., Inc.,* 36 Md.App. 274, 373 A.2d 965 (1977); *Mervin L. Blades & Son v. Lighthouse,* 37 Md.App. 265, 377 A.2d 523 (1977).

---

**3.** We point out that the tenancy had expired in *Harris* and that it had not expired in the matter *sub judice* when the mechanic's lien action was filed. By distinguishing *Harris,* we are not to be understood as indicating our agreement or disagreement with the *Harris* holding.

■ We agree with Judge Eschenburg that the equities are with Eastern who supplied the labor and materials for originally moving the building onto Taurus's land. The purpose of the mechanic's lien law is to protect the materialmen, and it is to be construed in the most liberal manner in favor of mechanics and materialmen. *Hurst v. V & M of Virginia,* 293 Md. 575, 446 A.2d 55 (1982); *Frank J. Klein & Sons v. Laudeman,* 270 Md. 152, 311 A.2d 780 (1973); *T. Dan Kolker, Inc. v. Shure,* 209 Md. 290, 121 A.2d 223 (1956).

■ Taurus, however, offers three specific reasons why the lien should be ineffective. First, Taurus avers that it did not receive 90 days notice of Eastern's intention to file a lien, which notice is required by Real Prop. Art. § 9–104. The flaw in that argument is that § 9–104 applies only to subcontractors. Taurus admits that Eastern was not a subcontractor. Therefore, Taurus's argument fails. *See* Real Prop. Art. § 9–101(f).

■ Additionally, Taurus claims that Eastern failed to name Taurus as a necessary party defendant. Md.Rule BG71 c 1. That rule provides that the necessary party defendant is the owner of the land against which the lien is sought to be established. Rule BG70 e states that "when the contractor executes the contract with a tenant for life or for years, 'owner' means the tenant." By any reasonable interpretation of the rule, the tenant, Cabana, was the necessary party, not Taurus; Cabana was the tenant with whom Eastern contracted.

■ Taurus argues that the lien violates Real Prop. Art. § 9–103(c)(2). That section provides that the lien can only be established "to the extent of tenant's interest." Taurus points to *Noone Electric Co. v. Frederick Mall,* 278 Md. 54, 359 A.2d 91 (1976), where the Court said that a lien can attach only to whatever interest is held by the person liable for the improvement, and not against the reversionary interest of the landlord. Taurus correctly recites the law but misapplies it. Eastern's lien was established to the

extent of Cabana's interest only, *i.e.*, to the building and the leasehold interest. The lien did not originally, nor does it now, attach to Taurus's reversionary interest, because Taurus's reversionary interest is in the land, not in the building. A "reversion," according to *Black's Law Dictionary*, 5th Ed. (1981), is a future interest left in a transferor. The land reverted to Taurus at the termination of the lease with Cabana, but the building was forfeited to Taurus; the building did not revert to Taurus because Taurus never owned it.

JUDGMENTS AFFIRMED.

THREE–FOURTHS OF THE COSTS TO BE PAID BY APPELLANT, CABANA.

ONE–FOURTH OF THE COSTS TO BE PAID BY APPELLANT, TAURUS.